# HILTON *v.* SOUTH CAROLINA PUBLIC RAILWAYS COMMISSION

No. 90–848. Argued October 8, 1991—Decided December 16, 1991

198

KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, STEVENS, and SOUTER, JJ., joined. BLACKMUN, J., concurred in the judgment. O'CONNOR, J., filed a dissenting opinion, in which SCALIA, J., joined, *post*, p. 207. THOMAS, J., took no part in the consideration or decision of the case.

*Robert J. Beckham* argued the cause and filed briefs for petitioner.

*Keating L. Simons III* argued the cause and filed a brief for respondent.*

JUSTICE KENNEDY delivered the opinion of the Court.

In this case we must decide whether the Federal Employers' Liability Act (FELA), 53 Stat. 1404, 45 U. S. C. §§ 51–60, creates a cause of action against a state-owned railroad, enforceable in state court. We hold that it does, reaffirming in part our decision in *Parden* v. *Terminal Railway of Alabama Docks Dept.*, 377 U. S. 184 (1964).

I

Petitioner Kenneth Hilton was an employee of the South Carolina Public Railways Commission. The commission, which has some 300 employees, is a common carrier engaged in interstate commerce by railroad and is an agency of the State of South Carolina, having been created by statute in 1969. Hilton alleges he was injured in the scope and course of his employment and that the negligence of the commission was the cause of the accident. In the case now before us the commission is the respondent.

To recover for his injuries, petitioner first filed a FELA action in United States District Court. That case was pending when we announced our decision in *Welch* v. *Texas Dept. of Highways and Public Transportation*, 483 U. S. 468 (1987), which held that the Jones Act, § 33, 41 Stat. 1007, 46 U. S. C. App. § 688, does not abrogate the States' Eleventh Amendment immunity. The Jones Act incorporates the remedial scheme of FELA; and, based on his understanding that Eleventh Amendment immunity from Jones Act suits would apply as well to FELA, petitioner dismissed his

---

*Robert M. Weinberg, Walter Kamiat,* and *Laurence Gold* filed a brief for the American Federation of Labor and Congress of Industrial Organizations as *amicus curiae* urging reversal.

*Richard Ruda* filed a brief for the National Governors' Association et al. as *amici curiae* urging affirmance.

federal-court action. He refiled his FELA suit in a South Carolina state court, and this is the case now before us.

The state trial court dismissed Hilton's complaint on the ground that FELA does not authorize an action for money damages against an agency of the State, even if suit is maintained in a state forum. Though acknowledging that in *Parden* v. *Terminal Railway of Alabama Docks Dept.*, *supra*, we interpreted FELA to permit those actions, the trial court said that *Parden* "has been severely limited by subsequent decisions of the Supreme Court." App. to Pet. for Cert. 22. The court held that *Parden* "is no longer good law," *id.*, at 23, and ordered the action dismissed, whereupon Hilton appealed to the South Carolina Supreme Court.

While his appeal was pending, the South Carolina Supreme Court decided *Freeman* v. *South Carolina Public Railways Commission*, 302 S. C. 51, 393 S. E. 2d 383 (1990). Addressing the same issue raised by this case, *Freeman* held that FELA does not subject States to liability in state-court suits. As did the trial court, the State Supreme Court acknowledged our *Parden* holding but concluded that in effect it had been overruled by our subsequent course of decisions.

In *Parden* we held that FELA authorizes suits for damages against state-owned railroads, and that by entering the business of operating a railroad a State waives its Eleventh Amendment immunity from suit in federal court. The latter holding was overruled in *Welch*, to accord with our more recent Eleventh Amendment jurisprudence, 483 U. S., at 478; but the *Welch* Court was explicit in declining to decide whether in the Jones Act (or in FELA) Congress intended to create a cause of action against the States. *Id.*, at 476, n. 6 (plurality opinion); see also *id.*, at 495 (WHITE, J., concurring). In other words, the *Welch* decision did not disturb the statutory-construction holding of *Parden*.

In addressing the latter issue, the South Carolina court found "dispositive" our decision in *Will* v. *Michigan Dept. of State Police*, 491 U. S. 58 (1989). *Will* was a suit brought in

state court under 42 U. S. C. § 1983 against Michigan state officials. We held that a State is not a "person" as that term is used in § 1983, and is not suable under the statute, regardless of the forum where the suit is maintained. In so holding, we relied in part on the lack of any "clear statement" in the statute of a congressional intent to impose liability on the State. In its *Freeman* decision that controlled its ruling in the instant case, the South Carolina court read *Will* to hold that a statute will not be interpreted to create a cause of action for money damages against a State unless it contains "unmistakably clear language" showing that Congress intended to do so. Deciding that the text of FELA does not have language conforming to this standard, the *Freeman* court held that FELA does not subject the States to liability.

When petitioner's case reached the South Carolina Supreme Court, it affirmed dismissal of the action in a one-sentence *per curiam* opinion, citing *Freeman*. We granted certiorari, 498 U. S. 1081 (1991), and now reverse.

## II

Our analysis and ultimate determination in this case are controlled and informed by the central importance of *stare decisis* in this Court's jurisprudence. Respondent asks us to overrule a 28-year-old interpretation, first enunciated in *Parden*, that when Congress enacted FELA and used the phrase "[e]very common carrier by railroad," 45 U. S. C. § 51, to describe the class of employers subject to its terms, it intended to include state-owned railroads. 377 U. S., at 187–188.[1] Just two Terms ago, in *Port Authority Trans-Hudson Corp.* v. *Feeney*, 495 U. S. 299 (1990), we assumed the applicability of FELA to state-owned railroads in finding that the defendant, a bistate compact corporation, had waived any

---

[1] Section 1 of FELA, 45 U. S. C. § 51, in pertinent part, provides:

"Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . ."

Eleventh Amendment immunity that it may have had. The issue here is whether we should reexamine this longstanding statutory construction. Because of the strong considerations favoring adherence to *stare decisis* in these circumstances, the answer to that question must be no. Time and time again, this Court has recognized that "the doctrine of *stare decisis* is of fundamental importance to the rule of law." *Welch, supra,* at 494; see also *Patterson* v. *McLean Credit Union,* 491 U. S. 164, 172 (1989); *Burnet* v. *Coronado Oil & Gas Co.,* 285 U. S. 393, 406 (1932) (Brandeis, J., dissenting). Adherence to precedent promotes stability, predictability, and respect for judicial authority. *Vasquez* v. *Hillery,* 474 U. S. 254, 265–266 (1986). For all of these reasons, we will not depart from the doctrine of *stare decisis* without some compelling justification. *Arizona* v. *Rumsey,* 467 U. S. 203, 212 (1984).

In the case before us the policies in favor of following *stare decisis* far outweigh those suggesting departure. "Considerations of *stare decisis* have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done." *Patterson, supra,* at 172–173. Congress has had almost 30 years in which it could have corrected our decision in *Parden* if it disagreed with it, and has not chosen to do so. We should accord weight to this continued acceptance of our earlier holding. *Stare decisis* has added force when the legislature, in the public sphere, and citizens, in the private realm, have acted in reliance on a previous decision, for in this instance overruling the decision would dislodge settled rights and expectations or require an extensive legislative response. This is so in the case before us.

Workers' compensation laws in many States specifically exclude railroad workers from their coverage because of the assumption that FELA provides adequate protection for those workers. See, *e. g.,* Colo. Rev. Stat. § 8–41–201 (Supp.

1990); D. C. Code Ann. § 36–301(9)(D) (1981); Ind. Code § 22–3–79(d) (Supp. 1991); La. Rev. Stat. Ann. § 23:1037 (West 1985); Neb. Rev. Stat. § 48–106(1) (1988). Counsel for respondent in this case conceded during oral argument that petitioner may be precluded from seeking an alternative remedy under state law for his injuries, because of a like exclusion in South Carolina law. S. C. Code Ann. § 42–1–350 (1976). Our overruling *Parden* would require these States to reexamine their statutes, meanwhile putting at risk all employees and employers who have been acting on the assumption that they are protected in the event of injuries caused by an employer's negligence. Overruling *Parden* would also throw into doubt previous decisions from this Court, cases holding that the entire federal scheme of railroad regulation applies to state-owned railroads. *United States* v. *California*, 297 U. S. 175 (1936) (Safety Appliance Act); *California* v. *Taylor*, 353 U. S. 553 (1957) (Railway Labor Act); see also *Transportation Union* v. *Long Island R. Co.*, 455 U. S. 678, 688 (1982). These factors all weigh in favor of adhering to *stare decisis*, and we cannot find here sufficient, countervailing justifications for departing from our precedents.

### III

Respondent argues that the Court has already considered and rejected these arguments for following *stare decisis* in *Welch*, 483 U. S., at 478. That is not accurate; and even if it were, *Welch* is not controlling here. The characterization of *Welch* is inaccurate because the most vital consideration of our decision today, which is that to confer immunity from state-court suit would strip all FELA and Jones Act protection from workers employed by the States, was not addressed or at all discussed in the *Welch* decision. Indeed, that omission can best be explained by the assumption, made express in the concurring opinion of JUSTICE WHITE, that

the Jones Act (and so too FELA [2]) by its terms extends to the States. This coverage, and the jurisdiction of state courts to entertain a suit free from Eleventh Amendment constraints, is a plausible explanation for the absence in *Welch* of any discussion of the practical adverse effects of overruling that portion of *Parden* which pertained only to the Eleventh Amendment, since continued state-court jurisdiction made those effects minimal.

Further, we cannot treat the holding of *Welch* as determinative of the issue now presented for our decision. As we explained in *Welch, supra,* at 471, our Eleventh Amendment cases do indeed hold that "Congress may abrogate the States' constitutionally secured immunity from suit in federal court *only* by making its intention unmistakably clear in the language of the statute." *Atascadero State Hospital* v. *Scanlon,* 473 U. S. 234, 242 (1985) (emphasis added). Congressional intent to abrogate Eleventh Amendment immunity must be expressed in the text of the statute; the Court will not look to legislative history in making its inquiry. *Dellmuth* v. *Muth,* 491 U. S. 223, 230 (1989). These cases establish a rule of constitutional law based on the Eleventh Amendment. That rule was developed after the *Parden* decision, and was found in *Welch* to have undercut the reasoning of *Parden* and to require *Parden*'s Eleventh Amendment holding to be overruled. But as we have stated

---

[2] The specific statutory construction issue reserved in *Welch* was not the precise issue before the Court today, but rather whether the language of the Jones Act ("Any seaman who shall suffer personal injury in the course of his employment," 46 U. S. C. App. § 688) was correctly interpreted by the Court in *Petty* v. *Tennessee-Missouri Bridge Comm'n,* 359 U. S. 275, 282–283 (1959), to afford a remedy against the States. JUSTICE WHITE's concurrence, *Welch* v. *Texas Dept. of Highways and Public Transportation,* 483 U. S., at 495, focused on this question, stating that "Congress has not disturbed this construction, and the Court, as I understand it, does not now purport to do so." The parties, however, agree that the resolution of this issue should be the same for the Jones Act and FELA. We thus assume so for the purposes of this decision.

on many occasions, "the Eleventh Amendment does not apply in state courts." *Will*, 491 U. S., at 63–64, citing *Maine* v. *Thiboutot*, 448 U. S. 1, 9, n. 7 (1980); *Nevada* v. *Hall*, 440 U. S. 410, 420–421 (1979).

The issue becomes, then, a pure question of statutory construction, where the doctrine of *stare decisis* is most compelling. Respondent argues, and the state courts in this case said, that the statutory-construction holding of *Parden* is no longer good law because of our later opinion in *Will, supra.* Respondent would make the result in *Will* solely a function of our Eleventh Amendment jurisprudence, reading the case to adopt a *per se* rule prohibiting the interpretation of general liability language to include the States, absent a clear statement by Congress to the effect that Congress intends to subject the States to the cause of action. Respondent argues that in light of *Will*, the same considerations which led us to a partial overruling of *Parden* in *Welch* should govern here.

We think the argument misconstrues the *Will* decision. *Will* did not import the entirety of our Eleventh Amendment jurisprudence into the area of statutory construction. It treated the Eleventh Amendment as a relevant consideration. 491 U. S., at 66–67; *Hafer* v. *Melo*, 502 U. S. 21, 30 (1991). The primary focus of *Will* was, as it should have been, on the language and history of § 1983. 491 U. S., at 64, 68–70; cf. *Dellmuth* v. *Muth, supra,* at 229–230. If *Will* had adopted a *per se* rule of the sort advocated by respondent, that entire discussion would have been unnecessary. The issue in *Will* and in this case is different from the issue in our Eleventh Amendment cases in a fundamental respect: The latter cases involve the application of a rule of constitutional law, while the former cases apply an "ordinary rule of statutory construction." *Will, supra,* at 65. This

conclusion is evident from our discussions in *EEOC* v. *Wyoming*, 460 U. S. 226, 244, n. 18 (1983), and in *Gregory* v. *Ashcroft*, 501 U. S. 452, 470 (1991), last Term. Both cases describe the plain statement rule as "a rule of statutory construction to be applied where statutory intent is ambiguous," *ibid.*, rather than as a rule of constitutional law; and neither case implicated the Eleventh Amendment. The distinction we draw is also supported by the Court's decision in *Welch*, and in particular by the fact that *Welch* in explicit terms reserved the statutory construction issue we resolve today. 483 U. S., at 476, n. 6.

When the issue to be resolved is one of statutory construction, of congressional intent to impose monetary liability on the States, the requirement of a clear statement by Congress to impose such liability creates a rule that ought to be of assistance to the Congress and the courts in drafting and interpreting legislation. The requirement also serves to make parallel two separate inquiries into state liability: Eleventh Amendment doctrine and canons of statutory interpretation. In most cases, as in *Will* and *Gregory* v. *Ashcroft*, the rule can be followed. The resulting symmetry, making a State's liability or immunity, as the case may be, the same in both federal and state courts, has much to commend it. It also avoids the federalism-related concerns that arise when the National Government uses the state courts as the exclusive forum to permit recovery under a congressional statute. This is not an inconsequential argument. Symmetry in the law is more than esthetics. It is predictability and order. But symmetry is not an imperative that must override just expectations which themselves rest upon the predictability and order of *stare decisis*.

In the case before us the clear statement inquiry need not be made and we need not decide whether FELA satisfies that standard, for the rule in any event does not prevail over the doctrine of *stare decisis* as applied to a longstanding

statutory construction implicating important reliance interests. And when the rule is either overcome or inapplicable so that a federal statute does impose liability upon the States, the Supremacy Clause makes that statute the law in every State, fully enforceable in state court. *Howlett* v. *Rose,* 496 U. S. 356, 367–368 (1990).

## IV

For the reasons we have stated, the judgment of the South Carolina Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE THOMAS took no part in the consideration or decision of this case.

JUSTICE BLACKMUN concurs in the judgment.

JUSTICE O'CONNOR, with whom JUSTICE SCALIA joins, dissenting.

The Court's decision in this case is an example of the truism that hard cases make bad law. The Court's understandable reluctance to leave petitioner without a remedy leads it to contort and confuse the clear statement doctrine we have articulated in recent opinions. For this reason, I respectfully dissent.

## I

The Court invokes *stare decisis* while at the same time running headlong away from it. In my view, this case is cleanly resolved by applying two recent precedents, *Will* v. *Michigan Dept. of State Police,* 491 U. S. 58 (1989), and *Welch* v. *Texas Dept. of Highways and Public Transportation,* 483 U. S. 468 (1987), not by rehabilitating a decision we have largely repudiated, *Parden* v. *Terminal Railway of Alabama Docks Dept.,* 377 U. S. 184 (1964).

In *Will*, we held that if Congress intends to upset the "'usual constitutional balance between the States and the Federal Government,'" it must make its intention to do so unmistakably clear. *Will, supra,* at 65 (quoting *Atascadero State Hospital* v. *Scanlon,* 473 U. S. 234, 242 (1985)). As we determined in that case, a federal statute requiring the States to entertain damages suits against themselves in state courts is precisely the kind of legislation that requires a clear statement, because of the long-established principle that a State cannot normally be sued in its own courts without its consent. *Will, supra,* at 67.

In *Welch*, we held that the language of the Jones Act, which applied the Federal Employers' Liability Act's (FELA's) remedial provisions to seamen, did not amount to a clear statement of Congress' intent to abrogate the States' Eleventh Amendment sovereign immunity. 483 U. S., at 474–476. In so holding, we expressly stated that "to the extent that *Parden* v. *Terminal Railway* . . . is inconsistent with the requirement that an abrogation of Eleventh Amendment immunity by Congress must be expressed in unmistakably clear language, it is overruled." *Id.,* at 478.

The result in this case should follow *a fortiori* from the reasoning of *Will* and *Welch*. We have already decided that a clear statement is necessary before a State may be required to entertain damages suits against itself in its own courts, and we have already decided that FELA's language does not amount to a clear statement of Congress' intent to abrogate state sovereign immunity. *Stare decisis* dictates that we follow the rules we have laid down in *Will* and *Welch*, not that we revive a substantially discredited case that litigants and lower courts had every reason to think defunct.

## II

The Court tries to drive a wedge between *Will* and *Welch* by characterizing the former as a statutory interpretation

case and the latter as a constitutional case. The clear statement rule, the Court says, was required in *Welch* because the Eleventh Amendment was implicated. In *Will*, by contrast, use of the clear statement rule was somewhat discretionary, because the issue in that case was a question of statutory interpretation in which the Constitution was *not* implicated. See *ante*, at 205–207. Because this case involves state sovereign immunity in state court, not federal court, and the Eleventh Amendment does not by its terms apply, the Court holds that the clear statement rule in this "nonconstitutional" context can be trumped by *stare decisis.*

The Court's distinction is untenable. The clear statement rule is not a mere canon of statutory interpretation. Instead, it derives from the Constitution itself. The rule protects the balance of power between the States and the Federal Government struck by the Constitution. Although the Eleventh Amendment spells out one aspect of that balance of power, the principle of federalism underlying the Amendment pervades the constitutional structure: The Constitution gives Congress only limited power to govern the Nation; the States retain power to govern locally. See *Dellmuth* v. *Muth,* 491 U. S. 223, 227 (1989) ("[A]brogation of sovereign immunity upsets 'the fundamental constitutional balance between the Federal Government and the States,' . . . placing a considerable strain on '[t]he principles of federalism that inform Eleventh Amendment'") (quoting *Atascadero State Hospital* v. *Scanlon, supra,* at 238, and *Pennhurst State School and Hospital* v. *Halderman,* 465 U. S. 89, 100 (1984)). Recognizing this basic truth about our governmental structure under the Constitution, we have been wary of extending the effect of congressional enactments into areas traditionally governed by the States, unless Congress has directed us to do so by an unmistakably clear statement. Indeed, in the cases in which we have employed the clear statement rule

outside the Eleventh Amendment context, we have recognized the rule's constitutional dimensions. *Gregory* v. *Ashcroft*, 501 U. S. 452, 461 (1991) ("This plain statement rule is nothing more than an acknowledgment that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere"); *Will*, 491 U. S., at 65 ("[I]f Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute'") (quoting *Atascadero State Hospital* v. *Scanlon, supra,* at 242); *United States* v. *Bass*, 404 U. S. 336, 349 (1971) (clear statement rule "rooted in . . . concepts of American federalism"). Thus, the Court's position that we are not required to employ the clear statement rule in this context ignores the constitutional source of the rule.

The Eleventh Amendment spells out one instance, but not the only one, in which respect and forbearance is due from the national to the state governments, a respect that cements our federation in the Constitution. The clear statement rule assumes that Congress will show that respect by not lightly abridging the powers or sovereignty retained by the States. From this standpoint, it makes little sense to apply the clear statement rule to congressional enactments that make the States liable to damages suits in federal courts, but not to apply the clear statement rule to congressional enactments that make the States liable to damages suits in their own courts. Sovereign immunity, a crucial attribute of separate governments, is infringed in both cases. The suggested dichotomy makes even less sense if we consider the remarkable anomaly that these two canons of statutory construction create: a statutory scheme in which *state* courts are the exclusive avenue for obtaining recovery under a *federal* statute.

## III

The Court gives no guidance to lower courts as to when it will apply the clear statement rule and when it will not. The Court's obscurity on this point does little to further the goals of stability and predictability that assertedly drive its analysis. The Court says only that *stare decisis* will prevail over the clear statement rule when Congress has manifested its acquiescence in this Court's statutory interpretation by its silence, and when citizens have "acted in reliance on a previous decision." *Ante*, at 202. Yet we have previously applied the clear statement rule despite the presence of both of these considerations.

Just four years ago, we held that Congress did not manifest its consent to allow States to be sued for FELA damages in federal court, despite congressional silence in the face of our long-established holding in *Parden. Welch* v. *Texas Dept. of Highways and Public Transportation*, 483 U. S. 468 (1987). Do the intervening four years make it more likely that Congress has silently consented to the remaining encroachment upon state sovereignty *Parden* sanctioned? How long must Congress remain silent before we declare its constructive consent to our statutory interpretation? The suggestion that this Court can, in some cases, better divine Congress' will to change the balance of power between the Federal Government and the States by listening to congressional silence than to a clear legislative statement substitutes telepathy for statutory interpretation.

In deciding when to ignore the requirements of the clear statement rule, the Court also considers the extent to which citizens have relied on our past decisions. This analysis looks to the reliance of the employees who may be without a remedy if FELA does not apply to their state employers. From the standpoint of the States, however, the Court ignores the fact that we generally do not assume States waive their right to challenge an abrogation of their traditional authority just because they have acquiesced in, or even relied

on, longstanding congressional regulation. See *Welch*, 483 U. S., at 473 (constructive consent to suit not sufficient). The "reliance" exception to the clear statement rule thus reinstates a theory of constructive waiver of sovereign immunity that our cases have repeatedly rejected. See *ibid.; Atascadero State Hospital* v. *Scanlon*, 473 U. S., at 241, 246–247; *Port Authority Trans-Hudson Corp.* v. *Feeney*, 495 U. S. 299, 306 (1990).

In sum, the Court's newly created exception to the clear statement rule threatens to eliminate it altogether, except when the States' Eleventh Amendment sovereign immunity is abrogated in federal court. It will be difficult, if not impossible, for lower courts to know when they should apply the rule in interpreting statutes that upset the traditional balance between the State and Federal Governments outside the context of Eleventh Amendment immunity.

## IV

The Court fears that strict application of our precedents will require a clear statement for *all* congressional regulation of state railroads. *Ante,* at 203. That fear is not well founded. The clear statement doctrine recently articulated in *Gregory* and in *Will* requires a clear statement by Congress before we assume that it intends to alter the usual constitutional balance of power in areas "traditionally regulated by the States." *Gregory,* 501 U. S., at 460. States have traditionally regulated their liability to damages suits; they have not traditionally regulated interstate railroads. See *Wabash, St. L. & P. R. Co.* v. *Illinois,* 118 U. S. 557, 577 (1886); *Transportation Union* v. *Long Island R. Co.,* 455 U. S. 678, 687 (1982). The clear statement rule in this context applies to FELA because it provides for a cause of action for damages; it does not apply to other congressional regulation of state railroads.

Nor would application of the clear statement rule here overrule *Port Authority Trans-Hudson Corp.* v. *Feeney,*

*supra.* In *Feeney*, we held that a State could waive its sovereign immunity from suit and consent to a damages action under FELA. *Feeney*'s underlying assumption, of course, was that Congress had intended to include state-owned railroads in the class of appropriate FELA defendants. If States are not within the contemplated category of defendants, then States could not consent to suit, because they cannot "create a cause of action . . . against an entity whom Congress has not subjected to liability." *Howlett* v. *Rose*, 496 U. S. 356, 376 (1990).

*Welch* did not hold that railroads owned by States were outside FELA's category of "[e]very common carrier by railroad," however. 45 U. S. C. § 51. In fact, *Welch* never clarified what would count in the context of FELA as a "clear statement" of congressional intent that States submit to damages suits. Because the aspect of state sovereignty at stake here is immunity from damages suits, the clear statement required should be tailored to that concern. See *Gregory* v. *Ashcroft*, 501 U. S. 452 (1991) (when application of federal statute would change state law with respect to tenure of state judges, clear statement rule tailored to question whether Congress intended the statute to apply to state judges, not whether Congress intended the statute to apply to States generally). A "clear statement" in this context, then, should be a statement that "Congress intended to abrogate the States' immunity from suit." *Dellmuth* v. *Muth*, 491 U. S., at 231.

Congress clearly wanted "[e]very common carrier by railroad" to be subject to suit under FELA. Railroad owners, then, are clearly within the contemplated category of defendants. Congress, however, did not clearly say whether it intended to force States that happen also to be railroad owners to submit to suit without their consent. Indeed, it is quite doubtful that Congress thought it had the power to create causes of action against the States in 1908 when FELA was enacted. See *Welch, supra,* at 496 (SCALIA, J., concurring

in part and concurring in judgment).  Since, in enacting FELA, Congress has not clearly stated that it wishes to abrogate a State's immunity from suit, but has said that it wishes to provide a damages remedy to employees of "[e]very common carrier by railroad," a State is a proper defendant *if* it consents to be sued under FELA in its capacity as a railroad owner.  But unless a State agrees to be treated as a railroad owner instead of a sovereign, it may not be sued without its consent.  As South Carolina has not agreed to throw off its mantle of sovereign immunity, it may not be sued under FELA.  I would therefore affirm the judgment of the South Carolina Supreme Court.

The concern that South Carolina Public Railways Commission's employees will be without a remedy should not determine the result in this case.  If we clarified our doctrine, instead of obfuscating it, States could allow other compensation schemes to fill the void left by FELA.  We should not so quickly assume that South Carolina will callously ignore the fate of its own workers.  Certainly, South Carolina has more of a stake in seeing that its employees are compensated than does Congress or this Court.

Instead of avoiding the implications of our previous decisions, I would adhere to them.  The Court's holding, while premised on fairness, is unfair to the States, courts, and parties that must parse our doctrine applying the clear statement rule.  Therefore, I respectfully dissent.