561 S.E.2d 650

**UNITED STUDENT AID FUNDS, INC., Appellant,**

v.

The **SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, an Agency of the State of South Carolina; Grady L. Patterson, in his official capacity as Treasurer for the State of South Carolina; and James A. Lander, in his official capacity as Comptroller General for the State of South Carolina, Respondents.**

No. 3468.

Court of Appeals of South Carolina.

Heard Jan. 12, 2000.

Decided March 25, 2002.

Lil Ann Gray and Charles F. Cooper, II, both of Cooper, Coffas, Moore & Gray, of Columbia, for appellant.

Elizabeth F. Potter, Staff Counsel of South Carolina Department of Health and Environmental Control; and Attorney General Charles M. Condon and Assistant Deputy Attorney General J. Emory Smith, Jr., all of Columbia, for respondents.

HUFF, J.

United Student Aid Funds, Inc. (USA Funds) brought this action seeking an order directing the South Carolina Department of Health and Environmental Control, the State Treasurer, and the Comptroller General (collectively, DHEC) to garnish the wages of a DHEC employee.[1] The garnishment was to collect on the defaulting employee's student loan. USA Funds sought the order pursuant to the wage garnishment provision in 20 U.S.C.A. § 1095a (West 2000), which governs the guarantee of student loans. The trial court dismissed the

---

1. USA Funds alleged the Treasurer and Comptroller General are responsible for overseeing state funds and the production of payroll checks of all South Carolina state employees and to making disbursements therefrom.

action, finding 20 U.S.C.A. § 1095a is not applicable to the states and their agencies. USA Funds appeals. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

USA Funds is a nonprofit, Delaware corporation, which operates as a student loan guaranty agency. In 1990, USA Funds guaranteed a promissory note in the principal amount of $2,200.00 for a student loan obtained by Brenda L. Irons. Irons subsequently defaulted on the loan.

USA Funds guaranteed Irons's student loan pursuant to Federal Family Education Loan Program, 20 U.S.C.A. § 1071 *et seq.* (West 2000 & Supp.2001). Under this Act, the United States Congress enacted a program in which the federal government encouraged the making of loans by private lenders to finance the post secondary education of eligible students. *See* 20 U.S.C.A. § 1071 (West 2000). A guaranty agency guarantees payment of a loan made by an eligible lender and pays the holder of the loan if the student defaults. 20 U.S.C.A. § 1078 (West 2000 & Supp.2001). The United States Secretary of Education reimburses the guaranty agency for all or part of these payments under a reinsurance agreement with the agency. 20 U.S.C.A. § 1978(c)(1)(A) (West 2000). Further, a guaranty agency also receives funds on behalf of the Secretary, including collecting defaulted student loans upon which the guaranty agency has paid the holder and received reimbursement from the Secretary. 20 U.S.C.A. § 1078(c)(2) (West 2000). When a guaranty agency collects money on a defaulted student loan, it retains a portion for the costs of collection and forwards the remainder to the Secretary. 20 U.S.C.A. § 1078(c)(2)(D) & (6) (West 2000).

To assist the Secretary of Education and guaranty agencies in collecting defaulted student loans, the United States Congress gave guaranty agencies the authority to administratively issue "orders" to the employers of defaulting borrowers that require the employers to withhold up to 10% of the disposable wages of the borrower after the employee is provided with notice and an opportunity for a hearing. 20 U.S.C.A. § 1095(a). The portion of 20 U.S.C.A. § 1095(a) being challenged provides:

the employer shall pay to the Secretary or the guaranty agency as directed in the withholding order issued in this action, and shall be liable for, and the Secretary or the guaranty agency, as appropriate, may sue the employer in a State or Federal court of competent jurisdiction to recover, any amount that such employer fails to withhold from wages due an employee following receipt of such employer of notice of the withholding order, plus attorneys' fees, costs, and, in the court's discretion, punitive damages, but such employer shall not be required to vary the normal pay and disbursement cycles in order to comply with this paragraph. . . .

20 U.S.C.A. § 1095a(a)(6) (West 2000).

On October 27, 1995, USA Funds paid Irons's note holder $2,770.08 pursuant to its guarantee and received an assignment of the note. USA Funds then undertook collection of the note. USA Funds served Irons with notice on July 29, 1997 of its intent to initiate withholding proceedings. Irons did not request a hearing on the proposed garnishment within thirty days as permitted under the federal statute. USA Funds thereafter issued an "Order of Withholding from Earnings" to Irons's employer, DHEC, on September 4, 1997. The order instructed DHEC to withhold up to 10% of Irons's disposable income every payday until the amount then outstanding, $4,089.02, had been paid in full.

DHEC did not remit any of Irons's wages in accordance with the withholding order. USA Funds sent DHEC two additional notices on October 10, 1997 and January 14, 1998 requesting compliance with the first order. On May 18, 1998, counsel for USA Funds sent a demand letter requesting compliance with the withholding order. However, DHEC still did not withhold Irons's wages.

USA Funds filed this action on July 17, 1998 seeking an order directing DHEC to withhold a portion of Irons's wage in accordance with 20 U.S.C.A. § 1095a until the defaulted loan was paid either in full or until Irons no longer worked at DHEC. USA Funds also sought recovery for the amount DHEC should have withheld since the date of USA Funds's first withholding notice. DHEC moved to dismiss pursuant to Rules 12(b)(6) and 12(h)(2), SCRCP, arguing, *inter alia,* that

there is no provision in 20 U.S.C.A. § 1095a for its application to the states and their agencies, and it is not an "employer" as that term is used in the statute.

The trial court dismissed USA Funds's complaint, finding 20 U.S.C.A. § 1095a inapplicable to the State of South Carolina and its agencies. It found the act does not define the word "employer" or otherwise indicate that it would apply to the states. It ruled that Congress may not subject states to generally applicable laws unless "it expresses with unmistakable clarity an intent to do so." Thus, the court concluded: "The Wage Garnishment law does not apply to the State Defendants herein because it lacks a clear statement of congressional intent to apply the law to the State."

## *LAW/ANALYSIS*

USA Funds argues the trial court erred in ruling 20 U.S.C.A. § 1095a does not apply to the State of South Carolina and its agencies. We disagree.

The United States Constitution establishes a system of dual sovereignty between the States and the Federal Government. *Gregory v. Ashcroft,* 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991). Thus, the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause. *Id.* at 457. Although Congress may legislate in areas traditionally regulated by the states, this is an extraordinary power in a federalist system and one which the courts will assume Congress does not exercise lightly. *Id.* at 460.

Furthermore, the Court has recognized the "ultimate guarantee of the Eleventh Amendment[2] is that nonconsenting States may not be sued by private individuals in federal court." *Board of Trustees of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). The Court further extended the Eleventh Amendment's recognition of States' sovereignty to apply to private suits in state courts, as well as in federal courts in *Alden v. Maine,* 527 U.S.

---

**2.** "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). The Court elucidated,

> Congress has vast power but not all power. When Congress legislates in matters affecting the States, it may not treat these sovereign entities as mere prefectures or corporations. Congress must accord States the esteem due to them as joint participants in a federal system, one beginning with the premise of sovereignty in both the central Government and the separate States. Congress has ample means to ensure compliance with valid federal laws, but it must respect the sovereignty of the States.

*Id.* at 758.

It explained that unlimited congressional power to authorize suits in state court to recover damages from the States' treasuries would give Congress a power and leverage over the States that is not contemplated by our constitutional design. *Id.* at 750. It further found such suits would place unwarranted strain on the States' ability to govern in accordance with the will of their citizens by impinging on the States' allocation of resources. *Id.* at 751. Thus the Court held that the powers delegated to Congress under Article I do not include the power to subject nonconsenting states to private suits for damages in the state courts. *Id.* at 754.

However, when acting pursuant to a valid grant of constitutional authority, Congress may abrogate the States' Eleventh Amendment immunity when it unequivocally intends to do so. *Garrett,* 531 U.S. at 363.

When determining whether Congress intended for legislation to apply to the States, the United States Supreme Court has recognized the "plain statement rule," which is "an acknowledgment that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere." *Gregory v. Ashcroft,* 501 U.S. 452, 461, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991). Under this rule:

> If Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute.... Congress should make its intention "clear and manifest" if it intends to pre-empt the

historic powers of the States. In traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision.

*Id.* at 460–61 (citations and internal quotation marks omitted); *see also Hilton v. South Carolina Pub. Rys. Comm'n,* 502 U.S. 197, 206, 112 S.Ct. 560, 116 L.Ed.2d 560 ("When the issue to be resolved is one of statutory construction, of congressional intent to impose monetary liability on the States, the require-ment of a clear statement by Congress to impose such liability creates a rule that ought to be of assistance to the Congress and the courts in drafting and interpreting legislation.").

As the trial court noted, where Congress has intended for States to be subject to its law, it has said so. *See e.g.,* Federal Debt Collection Act, 28 U.S.C.A. § 3002(10) (West 1994) (ex-pressly defining "person[s]" subject to its terms as including a "State or local government."); Fair Labor Standards Act, 29 U.S.C.A. § 203(d) (West 1998) (defining "employer" to include a public agency); Age Discrimination in Employment Act [ADEA] 29 U.S.C.A. § 630(b)(2) (West 1999) (definition of employer amended in 1974 to include the States).

In addition to applying the plain statement rule in determin-ing the applicability of the statute to the States, we also consider the doctrine of constitutional doubt, which provides that when a statute is susceptible of two constructions, courts interpret the statute to avoid "grave and doubtful constitution-al questions." *Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998).

Irons resigned from her employment with DHEC effective October 1, 1998.[3] Therefore, USA Funds' action is one for money damages.

We look to the language of the statute to determine whether Congress intended 20 U.S.C.A. § 1095a to infringe upon the States' sovereignty. The word "employer" is not defined with the statute. We find no evidence of Congress's "clear and manifest" intent for the statute to authorize a suit for money

---

3. South Carolina law prohibits employment by a State agency of a person considered in default of a guaranteed, federally insured student loan. S.C.Code Ann. § 59–111–50 (1990).

damages against the States. Accordingly, we find the trial court did not err in concluding the federal wage garnishment provision in 20 U.S.C.A. § 1095a does not apply to this action against the State of South Carolina and its agencies.[4]

## *CONCLUSION*

For the foregoing reasons, the decision of the trial court dismissing USA Funds' action is

**AFFIRMED.**

GOOLSBY and HOWARD, JJ., concur.

---

4. Because we find Congress did not intend for 20 U.S.C.A. § 1095a to apply to the States, we need not address USA Fund's contention that the State of South Carolina consented to being considered an employer.