EFFRON, Judge,
with whom BAKER, J., joins (dissenting):
The lead opinion overrules fifty years of precedent on the subject of abatement. Today’s decision is contrary to the express terms of the Uniform Code of Military Justice [hereinafter UCMJ], the consistent treatment of abatement by our Court dating from the earliest days of practice under the Code, the treatment of cases in the federal civilian courts of appeals, and the prevailing practice under state law.

Statutory requirements under the UCMJ

This case is about the statutory provisions of the UCMJ governing finality. In particular, this case addresses the issue of finality in cases subject to review in our Court when the death of the Appellant occurs before statutory proceedings have been completed in our Court. The UCMJ contains three pertinent statutory provisions. When the findings and sentence of a court-martial have been approved by a Court of Criminal Appeals, the decision of that court becomes the “final judgment as to the legality of the proceedings” under Article 71(c), UCMJ, 10 U.S.C. § 871(c) (2000) without further review by our Court if one of the following conditions has been met: (1) the service member withdraws an appeal of a non-capital case; (2) the service member does not file a timely petition for review and the case is not otherwise under review by our Court; (3) our Court rejects a petition for review.
Although the finality language in Article 71(c) refers to cases in which a punitive separation has been adjudged, Rule for Courts-Martial 1209 [hereinafter R.C.M.], makes it clear that the same considerations apply to all courts-martial reviewed by the Courts of Criminal Appeals, regardless of the nature of the sentence:
R.C.M. 1209. Finality of courts-martial (a) When a conviction is final. A court-martial conviction is final when:
(1) Review is completed by a Court of Criminal Appeals and—
(A) The accused does not file a timely petition for review by the Court of Appeals for the Armed Forces and the case is not otherwise under review by that court; and
(B) A petition for review is denied or otherwise rejected by the Court of Appeals for the Armed ForcesL]
R.C.M. 1209 is consistent with the finality provisions of Article 76, UCMJ, 10 U.S.C. § 876 (2000), and the direct review provisions of Article 67(a), UCMJ, 10 U.S.C. § 867(a) (2000). Article 76 provides that the proceed *408 ings of a court-martial are “final and conclusive” only when “approved, reviewed, or affirmed as required by [the UCMJ].” Article 67(a) describes two classes of cases within our jurisdiction that involve mandatory review — capital cases and eases submitted to our Court upon certification of the Judge Advocate General concerned. Article 67(a)(l)-(2). With respect to a third class of cases — petitions by a service member — Article 67 provides:
(a) The Court of Appeals for the Armed Forces shall review the record in—
(3) all cases reviewed by a Court of Criminal Appeals which, upon petition of the accused and on good cause shown, the Court of Appeals for the Armed Forces has granted a review.
The use of the term “shall review” in Article 67 is significant. Compare 10 U.S.C. § 101(e)(l)(2000)(“ ‘shall’ is used in an imperative sense”) with id. § 101(e)(2)(2000)(“ ‘may* is used in a permissive sense.”) Although Article 67(a)(3) provides our Court with much greater flexibility than the Article III courts of appeals in terms of deciding which cases to review, we do not have the unfettered discretion of the Supreme Court to deny review regardless of the merits of the case. Compare 28 U.S.C. § 1291 (2000)(providing the Article III courts of appeals with “jurisdiction of appeals from all final decisions of the district courts” except where a statute provides for direct review in the Supreme Court) with 28 U.S.C. §§ 1254(1), 1257-1259 (2000)(describing cases that “may be reviewed” by the Supreme Court by writ of certiorari). As noted in a treatise on military law, “Counsel familiar with Supreme Court practice should not confuse the ‘good cause’ standard [under Article 67] with certiorari. Those courts that may review a case by issuing a writ of certiorari are not required to hear a case merely because a party demonstrates viable legal issues requiring relief.” Legal Services, Dep’t of the Army, Pamphlet No. 27-173, Trial Procedure 247 (1992).
The combination in Article 67 of mandatory language (“shall review”) and a flexible standard (“upon good cause shown”) reflects congressional intent to provide service members with a significant opportunity to obtain review by an independent, civilian tribunal, without requiring our court to grant full review in every case. See United States v. Byrd, 53 M.J. 35, 36-37 (C.A.A.F.2000)(citing H.R.Rep. No. 81-491, at 6-7 (1949); S.Rep. No. 97-146, at 36 (1981)). See also S.Rep. No. 98-53, at 34 (1983).

Statutory interpretation

Courts-martial exercise limited, statutory jurisdiction over specific persons. See Articles 2-3, UCMJ, 10 U.S.C. §§ 802, 803 (2000); see R.C.M. 201(b)(4). The accused is the defendant at a court-martial, and the UCMJ does not authorize substitution of another person as a party to the court-martial if the accused dies either during or after trial.
«Shortly after the UCMJ was enacted, our Court confronted the question of what action could be taken under the Code when an appellant died prior to final review of the legality of the proceeding. In United States v. Mosher, 14 C.M.R. 229 (1953), the Court was informed through a motion for abatement that the appellant had died subsequent to action on the case by the Board of Review — the predecessor of today’s Courts of Criminal Appeals. Our Court granted the motion for abatement and dismissed the petition for grant of review. Id. at 229. For over fifty years, our Court consistently has granted motions for abatement when the appellant dies prior to issuance of a decision by our Court, as noted in the lead opinion. 58 M.J. at 402-03.

Stare Decisis

Reliance on precedent as a critical guidepost in deciding cases — the doctrine of stare decisis — is essential to the fair administration of justice. As the Supreme Court has emphasized, “it- is indisputable that stare decisis is a basic self-governing principle within the Judicial Branch, which is entrusted with the sensitive and difficult task of fashioning and preserving a jurisprudential system that is not based upon ‘an arbitrary discretion.’ ” Patterson v. McLean Credit Union, 491 U.S. 164, 172, 109 S.Ct. 2363, 105 L.Ed.2d 132 *409 (1989)(quoting The Federalist No. 78, at 490 (A.Hamilton)(H. Lodge ed.1988)). Adherence to precedence “is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.” Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).
Because stare decisis is a principle of judicial decision making, not a rule, a precedent may be overruled when it is “unworkable or ... badly reasoned.” Id., quoted in United States v. Tualla, 52 M.J. 228, 231 (C.A.A.F. 2000). The role of precedent is particularly important in matters involving statutory interpretation:
[A]ny departure from the doctrine of stare decisis demands special justification____ [T]he burden borne by the party advocating the abandonment of an established precedent is greater where the Court is asked to overrule a point of statutory construction ... for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done.
Patterson, 491 U.S. at 172-73, 109 S.Ct. 2363 (citations and internal quotations omitted).
The lead opinion would overturn a half-century of consistent precedent on the ground that our precedent is based upon a “policy” that is not “compelled by the interests of justice or the jurisdictional underpinnings of this Court.” 58 M.J. at 406. The issue before us, however, does not involve a choice among competing public policy alternatives. Our precedent involves a matter of statutory interpretation, in which the legal policy preferences of the judiciary yield to precedent unless the proponents of change demonstrate that the interpretation is either unworkable or badly reasoned.
As the lead opinion acknowledges, abatement under our precedent is not unworkable. 58 M.J. at 406. The lead opinion’s suggestion that “the weight of reason supports a change in the rule” of abatement, falls far short of demonstrating that the rule is “poorly reasoned.” 58 M.J. at 406.
The statutory basis for our current precedent was reviewed in Berry v. Judges of the United States Army Court of Military Review, 37 M.J. 158, 159-60 (C.M.A.1993)(discussing the finality provisions in Article 71.) The opinion noted that our precedent was consistent with the prevailing practice in the Article III courts of appeals and the statutory language governing review of petitions in our Court. Id. at 160 (discussing Article 67(a)(3)).
The lead opinion offers several reasons for overruling Berry. First, the lead opinion states that abatement is not required by the express language of Article 71. 58 M.J. at 406. Under the lead opinion’s theory, the decision of the Court of Criminal Appeals would constitute the final judgment of the legality of the proceedings in this case even though the decision was not final under the express requirements of Article 71. The majority’s assertion that nothing in Article 71 “compels” the statutory interpretation set forth in Berry does not provide the appropriate test for overruling precedent. The issue before us is whether our precedents are so poorly reasoned that they must be overturned. Given the consistency between abatement, the language of Article 71, and the President’s interpretation of the pertinent statutes in R.C.M. 1209, that ease has not been made.
Second, the lead opinion states that our precedent is premised on “the distinction drawn between the nature of review by petition at this Court and review by certiorari at the Supreme Court.” 58 M.J. at 406 (citing Berry, 37 M.J. at 160, United States v. Kuskie, 11 M.J. 253, 254-55 (C.M.A.1981)). Neither ease, however, held that our precedent on abatement was premised upon the distinction between the nature of our review and the nature of review in the Supreme Court; rather, in each ease the merits of the analogy between review in our Court and review in the Supreme Court was raised by the Government as an argument for overturning our precedent. Each opinion explained why the Government’s argument was unpersuasive. See Berry, 37 M.J. at 160; Kuskie, 11 M.J. at 254-55.
*410 The lead opinion reiterates the suggestion, rejected in Berry and Kuskie, that we should overturn our precedents by analogizing review in our Court to review in the Supreme Court. 58 M.J. at 401-02, 404-06. The opinion notes that the Supreme Court in the 1970s first adopted a policy of abatement, 58 M.J. at 401 (citing Durham v. United States, 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971)), and then abandoned it five years later without explanation, 58 M.J. at 401 (citing Dove v. United States, 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976)). The lead opinion also observes that the Article III courts of appeals have continued consistently to apply abatement, even in the aftermath of Dove, noting that several courts have explained the difference in terms of the distinction between the discretionary review in the Supreme Court and appeal as a matter of right in the courts of appeals. 58 M.J. at 401-02. Building upon the distinction between abatement in the courts of appeals and non-abatement in the Supreme Court, the lead opinion suggests that because our review of petitions for “good cause” under Article 67(b)(3) is more analogous to discretionary review in the Supreme Court than appeal as of right in the circuit courts, we should follow the Supreme Court’s non-abatement policy, as advocated by prior dissenting opinions in this Court. 58 M.J. at 404-06.
There are several problems with this argument. 'First, the fact that Berry and Kuskie did not involve unanimous opinions does not provide a reason for abandoning our precedents. In this regard, the Supreme Court’s consideration of the relationship between pri- or dissents and stare decisis in Patterson is instructive. In Patterson, the Court considered whether to overrule Runyon v. McCrary, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976)(interpreting a federal statute as prohibiting racial discrimination in private schools admissions). With respect to the effect of prior divisions on stare decisis, the Court said:
The arguments about whether Runyon was decided correctly in light of the language and history of the statute were examined and discussed with great care in our decision. It was recognized at the time that a strong case could be made for the view that the statute does not reach private conduct, but that view did not prevail. Some Members of this Court believe that Runyon was decided incorrectly, and others consider it correct on its own footing, but the question before us is whether it ought now to be overturned.
491 U.S. at 171-72, 109 S.Ct. 2363 (citations omittedXdeclining to overturn the Court’s precedent). We are in a similar situation. The issue is not whether we now agree that Berry was decided correctly or incorrectly, “the question before us is whether it ought now to be overturned.”
Second, the issue is not whether our practice is so analogous to review in the Supreme Court that we should adopt a “policy” of abatement. The issue before us is a matter of statutory interpretation. The current case, like the similar cases we have reviewed over the past 50 years, requires us to interpret the mandate of Article 67(b)(3) — that we “shall review” petitions “upon good cause shown” — in light of the finality provisions of Article 71 and Article 76. See also R.C.M. 1209.
Third, the issue is not how we should resolve this question as a matter of first impression. Under the doctrine of stare decisis, the burden is on those who would change the precedent to demonstrate that our Court’s interpretation of the law is so poorly reasoned or unworkable that it should be abandoned.
Fourth, the brief memorandum decision in Dove applying a policy of non-abatement in the Supreme Court and the circuit court opinions applying a policy of non-abatement cited in the lead opinion, 58 M.J. at 401-02, 405-06 involve specific statutes cast in terms quite different from the applicable provisions of the UCMJ. Compare 28 U.S.C. § 1254(l)(wholly discretionary review in the Supreme Court), and 28 U.S.C. §§ 1291-1292 (2000)(appeal as of right to the circuit courts), with Article 67(b)(3)(providing that our Court “shall review” petitions “upon good cause shown”) and Article 71(c)(setting forth express conditions governing final de *411 terminations as to the legality of court-martial proceedings). At best, the comparison between the practice of non-abatement at the Supreme Court and abatement at the courts of appeals provides fodder for a policy debate regarding the competing merits of each approach. What is important from the perspective of the current case is that the differing practices in the Article III courts demonstrate that they have not rejected abatement, and that the policies developed in those courts do not take into account the specific statutory provisions of the UCMJ. In the context of stare decisis, where the proponents of abandoning precedent must show that our Court’s position is “poorly reasoned,” the differing views of the Article III courts do not demonstrate that our prior cases have misconstrued the interrelationship among Articles 67, 71, 76 and R.C.M. 1209.
Finally, the Supreme Court also has emphasized the relationship between precedent and congressional action for purposes of considering stare decisis. In Hilton v. South Carolina Public Ry. Comm’n, 502 U.S. 197, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991), the Court considered whether to overturn the precedent of Parden v. Terminal Railway of Alabama Docks Department, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964)(constru-ing various federal statutes as permitting a cause of action against a state-owned railroad in state court). In the course of concluding that the precedent should not be overturned, the Court said:
Congress has had almost 30 years in which it could have corrected our decision in Parden if it disagreed with it, and has not chosen to do so. We should accord weight to this continued acceptance of our earlier holding.
502 U.S. at 202, 112 S.Ct. 560. With respect to the issue before us, Congress has had over 50 years to overturn Mosher and has chosen not to do so. Of particular note, the year after our 1981 decision in Kuskie, the Department of Defense submitted to Congress a comprehensive legislative proposal, including revision of the appellate review process, which led to enactment of the Military Justice Act of 1983, Pub.L. No. 98-209, 97 Stat. 1393. See S.Rep. No. 98-53, at 1, 7-11 (1983). The legislation, which included amendments to Articles 67 and 71, did not address abatement. Congressional inaction, which may stem from many causes, should be viewed with caution for purposes of statutory interpretation. Under Hilton, however, such inaction provides additional grounds for concluding that the proponents of changing our interpretation of the UCMJ have not surmounted the hurdle imposed by the doctrine of stare decisis, particularly in light of the broad language used by the President in the implementation of the pertinent statutory provisions. See R.C.M. 1209.

State court practice

The lead opinion observes that while most states apply some form of abatement, a number of states recently have moved in a different direction. 58 M.J. at 402. A number of those states, however, as a matter of state law, permit an appeal to proceed on the merits, based on the interests of society, the defendant, and the defendant’s estate in appellate resolution of the case. See, e.g., Gollott v. State, 646 So.2d 1297 (Miss.1994); State v. McDonald, 144 Wis.2d 531, 424 N.W.2d 411 (1988); State v. McGettrick, 31 Ohio St.3d 138, 509 N.E.2d 378 (1987); State v. Jones, 220 Kan. 136, 551 P.2d 801, 803-04 (1976); Commonwealth v. Walker, 447 Pa. 146, 288 A.2d 741, 742 (1972). Such a result, however, is not possible under the UCMJ, which makes no provision for substitution of a party. As a result, the lead opinion finds it necessary in the present case to dismiss the appeal, contrary to the approach of a significant number of states that have modified their abatement rules. The inconsistency between the majority’s decision and the approach of those states underscores the need for any change in this area to reflect comprehensive legislative consideration rather than piecemeal judicial action.

Policy considerations

The lead opinion offers a number of policy reasons for not applying abatement, including confidence in the capabilities of the Courts of Criminal Appeals, societal interests in the preservation of a judgment of convic *412 tion, and the impact on victims rights. 58 M.J. at 404-05. These are important policy concerns, and should be given full consideration in the appropriate forum in terms of balancing the relative merits of abatement and appellate review. Given the wide variety of means in which abatement has been applied or modified at both the state and federal level, however, these concerns do not resolve the issue of how any change should be implemented in the military justice system. Consideration of a new approach to abatement requires attention to a number of difficult questions, including:
(1) If the accused dies while the case is pending review by the convening authority, should the decision of the court-martial constitute the final judgment as to the legality of the proceedings?
(2) If the death occurs prior to a decision by a Court of Criminal Appeals, should the decision of the court-martial and action of the convening authority constitute the final judgment?
(3) If death occurs following a decision by the Court of Criminal Appeals, should there be an opportunity for further review on the merits through substitution of a party?
(4) If death occurs while a case is under mandatory review by our Court under Article 67(b)(1) (capital cases) or Article 67(b)(2) (certified cases), can the review proceed on the merits?
(5) Assuming one party is the United States in such a case, who is the other party?
These are critical questions, all opened but left unanswered by the lead opinion. Our current precedent may or may not represent the best policy choice, but it is clear, workable, and based on statute. Under the lead opinion, we face the possibility of years of litigation to resolve conflicting decisions at the command level, by individual services, and by the Courts of Criminal Appeals. Because this is a matter of statutory interpretation, we should sustain our precedent, relying on Congress to address these concerns and balance the interests of appellants, their families, victims, the armed forces, and society at large.