Vittorio GENTILE and Lydia Gentile, Debtors.

Vittorio Gentile and Lydia Gentile, Appellants,

v.

Mark G. DeGiacomo, Chapter 7 Trustee, Appellee.

BAP No. MB 12–071.
No. 11–19630–JNF.

United States Bankruptcy Appellate Panel of the First Circuit.

May 20, 2013.

Norman Novinsky, Esq., Brockton, MA, on brief for Appellants.

Mark G. DeGiacomo, Esq., and Keri L. Wintle, Esq., Boston, MA, on brief for Appellee.

Before LAMOUTTE, KORNREICH, and CABÁN, United States Bankruptcy Appellate Panel Judges.

KORNREICH, Bankruptcy Judge.

The debtors, Vittorio and Lydia Gentile, appeal the bankruptcy court's orders granting the motions of Mark G. DeGiacomo, the chapter 7 trustee, to sell four investment properties and the order denying their motion for reconsideration. This

appeal is **DISMISSED** because the debtors lack appellate standing.

## BACKGROUND

Janice Silverio is the guardian for Douglas Homsi and Joseph Homsi. Both Homsis sustained injuries in an automobile accident caused by the debtors' grandson while he was operating a vehicle owned by the debtors. Silverio brought a civil action for negligent entrustment and related causes of action against both debtors in state court and obtained a pretrial attachment in the amount of $15.6 million. In due course, Silverio received jury verdicts against both debtors; however, the trial court reversed the negligent entrustment verdict against Vittorio before entering judgment. The debtors appealed. While their appeal was pending in state court, they commenced this case under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts.[1]

The debtors identified Silverio on their schedules as the holder of the only secured claim on their residence and four investment properties.[2] They described her claim as a "judgment on appeal" in the amount of $9,492,000.00 with a potential deficiency claim in the amount of $7,116,800.00. The debtors listed several small unsecured claims and disclosed various items of personal property including a non-exempt Lexus automobile.

Almost one year after the commencement of the bankruptcy case, the chapter 7 trustee sought bankruptcy court approval to sell each of the four investment properties at public auction under § 363. He disclosed the Silverio lien as the only encumbrance on each property without mentioning that her judgment had been appealed. The sales were to be free and clear of liens with valid liens to attach to the proceeds of sales; the proceeds were to be distributed without further order; and the trustee's fees and expenses were to be paid from the proceeds of sales without further order.[3]

In written objections, the debtors asked the bankruptcy court to suspend the sales pending the outcome of their appeal. Invoking a balance of harms test, they said the sales would harm them more than a delay would harm the estate because they were maintaining and insuring the properties and paying the real estate taxes and because the properties were likely to increase in value while their appeal was pending. They also suggested that a reversal of Silverio's judgment would eliminate her secured and unsecured claims against the bankruptcy estate and enable the trustee to satisfy the remaining claims with the proceeds of the non-exempt Lex-

---

1. All references to the "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Code of 1978, as amended, 11 U.S.C. § 101, *et seq.*

2. The residence is not implicated in this appeal. The values of the four investment properties were listed as $439,500.00, $340,900.00, $250,000.00, and $376,800.00.

3. Section 506(c) allows a trustee to "recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim...." *See* 11 U.S.C.

§ 506(c). No agreement between the trustee and Silverio appears in the record. Upon questioning at oral argument, the trustee gave equivocal answers about his arrangement with Silverio. At first he said that Silverio asked him to sell the properties and that he had agreed to do so because it was his common practice to do whatever the largest unsecured creditor asked him to do. He said that Silverio was the largest unsecured creditor because she had agreed to waive her lien. When pressed, he conceded that Silverio had never agreed to waive her lien or pay his fees and expenses and that she was under no obligation to do either.

us.[4]

■ The bankruptcy court conducted a hearing on the sale motions and the debtors' objections. No witnesses or documents were offered by either party.[5] The bankruptcy judge framed the issue to be whether the sales should be suspended pending the state court appeal. The trustee displayed little knowledge of the appeal. He said there was no need for the bankruptcy court to evaluate the debtors' likelihood of success or otherwise estimate the value of Silverio's claim.[6] Asserting his duty to reduce property of the estate to cash under § 704, the trustee pushed for immediate sales;[7] but, by declaring, "the cash isn't going anywhere," he made it clear that he was not pressing for an immediate distribution.

Debtors' counsel said he presumed the issue on appeal in state court to be whether or not the jury was correct in finding that Lydia had allowed her grandson to drive the car. Upon hearing this, the bankruptcy judge asked, "How can the jury verdict be upset on appeal . . . if there is a factual finding?" By arguing "weight of the evidence" was counsel's reply. He acknowledged this was a unique argument, but added that state court appellate counsel thought his clients had a good chance of upsetting the verdict. Concluding that the debtors had failed to demonstrate a

likelihood of success on appeal, the bankruptcy judge said:

I'm going to overrule the debtors' objection. I don't see any reason why the Trustee should not perform his duties as a trustee in this case. He is correct that the debtors did commence this case voluntarily and there is no reason that I can see to suspend the performance of his duties simply because there is an appeal pending from the judgment.

Despite this ruling, counsel pressed his balance of harms argument until the judge said, "I have already made my ruling." Written orders followed.

The debtors sought reconsideration of the sale orders by arguing that § 704 requires a trustee to balance the need for expeditious action against the best interests of all parties in interest, including debtors. Tracking the trustee's objection, the bankruptcy court denied reconsideration because the debtors had failed to show newly discovered evidence or a manifest error of law. The debtors commenced this appeal to the Panel and asked the bankruptcy court to stay the sale orders.

The Panel immediately ordered the debtors to show cause why their appeal should not be dismissed for lack of standing. Upon the debtors' written response, the Panel allowed their appeal to proceed without rendering a final decision on their standing. A few days later, the bankrupt-

---

4. The trustee's brief confirms that the sum of all timely proofs of claim, excluding the Silverio claim, is $6,572.81 and that the trustee received $8,000.00 for the Lexus.

5. When there has been no demand for a full evidentiary hearing in contested matters, it is not unusual for a bankruptcy court to base its decisions on the representations of counsel. *See Cabral v. Shamban (In re Cabral),* 285 B.R. 563, 576 (1st Cir. BAP 2002). The record shows no demand for an evidentiary hearing in this instance.

6. The value of a contingent or unliquidated claim may be estimated when the actual fixing of the claim would unduly delay the administration of the case. *See* 11 U.S.C. § 502(c)(1).

7. The applicable portion of § 704 provides: "(a) The trustee shall—(1) collect and reduce to money the property of the estate . . . and close such estate as expeditiously as is compatible with the best interests of the parties in interest; . . ." 11 U.S.C. § 704(a)(1).

cy court granted the debtors' request for a stay pending appeal. The trustee's motion for reconsideration of the stay was denied.[8]

We do not rehearse the parties' appellate arguments on the merits because the outcome turns on the debtors' failure to demonstrate appellate standing.

### *JURISDICTION*

■■■ Ordinarily, we hear appeals from final bankruptcy court orders. *See* 28 U.S.C. §§ 158(a), (b), and (c). Here, the sale orders are final because nothing was left unresolved. The order denying reconsideration is also final because it too left nothing unresolved. But finality is not the sole factor for determining appellate jurisdiction. Other factors, including the absence appellate standing, may deprive us of jurisdiction. *See Zambrana Arroyo v. Scotiabank de P.R. (In re Zambrana Arroyo)*, 489 B.R. 486 (1st Cir. BAP 2013) (citing *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir.1992)).

■■■ Standing to appeal a bankruptcy court's sale order requires a party to be a "person aggrieved." *Spenlinhauer v. O'Donnell*, 261 F.3d 113, 117 (1st Cir. 2001). This "paradigm, which delimits appellate jurisdiction even more stringently than the doctrine of Article III standing, ... bestows standing only where the challenged order directly and adversely affects an appellant's pecuniary interests." *Id.* at 117–18 (citations omitted). "Since title to property of the estate no longer resides in the chapter 7 debtor, the debtor typically lacks any pecuniary interest in the chapter 7 trustee's disposition of that property."

*Id.* at 118 (citations omitted). A chapter 7 debtor will be a person aggrieved by a sale order "by demonstrating, *inter alia*, that nullification of the sale is likely to result in an overall surplus in the chapter 7 estate ... to which the debtor, *qua individual*, would become entitled once the bankruptcy case is closed...." *Id.* at 119 (citations omitted).

■■■ The party asserting appellate jurisdiction bears the burden of demonstrating standing. *Id.* at 118. In the normal course, standing is determined on findings of the bankruptcy court, which we will review for clear error. *Id.* When no inquiry on standing is made in the bankruptcy court, (i.e., whether the "nullification of the sale is likely to result in an overall surplus"), we may make the required findings on the appellate record if it discloses the requisite facts. *Id.*

■■■ Here, the debtors' standing to challenge the sales was addressed in the bankruptcy court. By framing the issue to be whether the sales should be suspended pending the state court appeal, the bankruptcy judge sought to ascertain whether a suspension would result in an overall surplus. This query inescapably entailed an evaluation of the viability of Silverio's judgment. To put it another way, the bankruptcy judge begged the debtors to demonstrate standing under federal law by showing a likelihood of success on appeal under state law. Concluding that they had failed to demonstrate a likelihood of success, she found that they lacked standing to object to the sales.

---

**8.** The Hon. Frank J. Bailey presided over the motion for stay pending appeal and the motion for reconsideration. In granting the debtors' request for a stay pending appeal and in denying the trustee's request for reconsideration of that stay, Judge Bailey applied the familiar four-part test for injunctive relief—

the debtors' likelihood of success on appeal, the harm to the debtors in the absence of a stay, the relative harm that a stay may cause the trustee, and the public interest. He overcame his doubts regarding the debtors' likelihood of success by giving greater weight in the debtors' favor on the balance of harms.

We are not inclined to quibble with either determination. In Massachusetts, the Supreme Judicial Court will not take upon itself " 'the duties of a tribunal of fact ... to determine what verdicts should have been rendered by the jury.' " *Abraham v. City of Woburn,* 383 Mass. 724, 421 N.E.2d 1206, 1211 (1981) (quoting *Electric Welding Co. v. Prince,* 200 Mass. 386, 86 N.E. 947 (1909)). Thus, on the record before her, it was reasonable for the bankruptcy judge to infer that the jury's verdict would not be upset on appeal. That conclusion informed her finding that the debtors lacked an actual, non-contingent, pecuniary interest in the properties at the time of the hearing and her implicit conclusion that a suspension of the sales would not result in an overall surplus.

■ The debtors assert standing to appeal based upon "a likely, albeit still contingent, pecuniary interest in an estate surplus." Recognizing that they may not be "persons aggrieved" under the *Spenlinhauer* standard because of their speculative, contingent interest, *see Orion Fitness Group, LLC v. River Valley Fitness (In re River Valley Fitness),* No. 03–474–JD, 2004 WL 524430, at *1, 2004 U.S. Dist. LEXIS 4132, at *2 (D.N.H. Mar. 17, 2004); *Marmarinos v. DeGiacomo (In re Marmarinos),* 464 B.R. 498, 501 n. 1 (1st Cir. BAP 2012) (citing *Spenlinhauer,* 261 F.3d at 118); *In re Miller,* No. RWT 10cv2466, 2011 WL 3758712, at *4, 2011 U.S. Dist. LEXIS 94994, at *12 (D.Md. Aug. 24, 2011), they propose that we apply a different test based on the great harm they are likely to suffer if their investment properties are sold before their state court appeal is resolved. We reject the debtors' balance of harms approach because the *Spenlinhauer* standard is a binding rule of law under the doctrine of *stare decisis. See Gately v. Commonwealth of Mass.,* 2 F.3d 1221, 1226 (1st Cir.1993). As such, it must be applied in future cases involving the same legal question. *Id.* The question here, as it was in *Spenlinhauer,* is whether the debtors are "persons aggrieved." To sidestep this obligatory approach, the debtors insist that the facts of their case are beyond the reach of *Spenlinhauer.* We disagree.

■ This case was commenced on the debtors' voluntary petition for chapter 7 relief. Thus, the investment properties became property of the estate by their own hands. The schedules show no secured claims beyond Silverio's judgment lien and very few relatively small unsecured claims. Nothing in the record suggests that the debtors obtained a stay of execution in the state court proceedings. This omission, and their failure to seek abandonment of the investment properties under § 554 or dismissal of their case, suggests strongly that they initiated the chapter 7 case to obtain the benefit of the automatic stay under § 362. Why else would they have sought bankruptcy relief? If it were to obtain a discharge from an onerous final judgment, they could have filed bankruptcy after losing their appeal. They chose the moment to file and, by acting when they did, they alone put their investment properties at risk. Moreover, because the trustee filed his sale motions almost one year after the commencement of the case, it cannot be said that he acted precipitously. "Fidelity to [*stare decisis* ] promotes 'stability, predictability, and respect for judicial authority.' " *Gately,* 2 F.3d at 1226 (quoting *Hilton v. S.C. Pub. Rys. Comm'n,* 502 U.S. 197, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991)). We are not inclined to abandon the *Spenlinhauer* doctrine and replace it with a balance of harms test to accommodate the debtors' poor timing.

## CONCLUSION

The bankruptcy court correctly determined that the debtors lacked standing to object to the trustee's sale motions. Consequently, they lack appellate standing and we lack jurisdiction to consider the merits of their appeal. This appeal is **DISMISSED.**

LAMOUTTE, Bankruptcy Judge, Dissenting.

I respectfully dissent. Although I agree with the legal analysis on a chapter 7 debtor's standing to appeal a sales order, I do not agree how the established legal precedent applies to the particular facts of this case. I concur with the determination made by the Hon. Frank J. Bailey in his Memorandum of Decision on Motion for Reconsideration dated November 30, 2012, that the immediate sales of the properties will cause irreparable harm to the debtors.

The chapter 7 trustee's duty to expeditiously dispose of estate property is unquestionable. 11 U.S.C. § 704(a)(1). However, the trustee's duty to sell property of the estate is premised on a benefit to the estate. The majority concludes that the debtors have no standing because they failed to establish that the sales would likely result in a surplus. If there is no equity in the properties, then there is no surplus. The conclusion assumes that the existing lien is valid. On the other hand, if there is no equity in the properties, then there is no benefit for the estate, and the trustee should move the bankruptcy court to abandon the same pursuant to § 554(a). The facts of the case show that the trustee failed to establish any benefit to the estate. There is no evidence that the secured creditor agreed to a carve out. *See* footnote 3 of the majority opinion. Thus, the trustee failed to articulate a sound business reason as to why the properties, with no equity, should be sold for the benefit of the estate. Therefore, the trustee's duty was to abandon the properties to the debtor and not to act as an agent for the secured creditor, irrespective of whether or not the sale proceeds would not be immediately distributed.

The uncontested facts of the case show that the only lien affecting the properties is a prejudgment attachment, which is subject to the creditors prevailing in the state court action. The negligent entrustment basis for liability against the debtors has already been dismissed as to co-debtor Vittorio Gentile. The remaining issues concerning liability are still on appeal. There is no final judgment yet.

The burden to establish a likelihood to succeed in the state court appeal was on the debtors. The majority acknowledges that at the hearing held to consider the contested matter "the trustee displayed little knowledge of the appeal." The debtors' arguments did not move the court. However, in my opinion, they had merit as negligent entrustment cause of action had already been dismissed. Therefore, there is a reasonable basis to find that the debtors may prevail on appeal. If they do prevail on appeal, then there is no lien and there may be an elimination or a significant reduction in the amount of damages. Under this scenario, the debtors may be irreparably harmed by a forced sale that is likely to result in a reduced sales price.

The debtors made a prima facie showing that they are persons economically aggrieved by the immediate sale of the properties before there is a final judgment determining their liability, and because, as of the date of the sale hearing, there was no equity to the estate, a fact that should have moved the trustee to abandon the properties to the debtors. Thus, "the challenged order directly and adversely affects [the] appellant's pecuniary interests." *Spenlinhauer*, 261 F.3d at 117, and, conse-

quently, impairs their rights over the properties.

The facts, if fully presented to the bankruptcy court, may have ended in a different result. The record, however, does not show that the bankruptcy court was placed in a position to balance the competing interests.