**ANDOVER COVERED BRIDGE, LLC, Debtor.**

**Andover Covered Bridge, LLC, Appellant,**

**v.**

**William K. Harrington, United States Trustee, Appellee.**

**BAP NO. EP 16–005**
**Bankruptcy Case No. 15–20489–PGC**

United States Bankruptcy Appellate Panel of the First Circuit.

July 26, 2016

Jeffrey P. White, Esq., on brief for Appellant.

Eric K. Bradford, Esq., on brief for Appellee.

Before Feeney, Godoy, and Harwood, United States Bankruptcy Appellate Panel Judges.

Per Curiam.

Andover Covered Bridge, LLC (the "Debtor") appeals from the following orders of the bankruptcy court: (1) the December 14, 2015 Order Granting Motion of the United States Trustee to Dismiss Chapter 11 Case of Andover Covered Bridge, LLC, Pursuant to 11 U.S.C. § 1112(b); and (2) the January 11, 2016 Order Denying Debtor's Motion to Alter or Amend or for a New Trial on Order of Dismissal Pursuant to Bankruptcy Rule 9023 and FRCP 59; And Alternatively For Amended Findings and An Amended Order Pursuant to Bankruptcy Rule 7052 and FRCP 52(b).[1] For the reasons set forth below, we **AFFIRM**.

## BACKGROUND

### I.  Pre–Bankruptcy Events

In August 2009, the Debtor bought real property located in Mechanic Falls, Maine (the "Property") for more than $4 million. To finance the purchase, the Debtor executed a promissory note payable to E–Layne Moulders Corp. and Amity Development Corp. in the original principal amount of $1,172,650.00. To secure the note, the Debtor executed a mortgage in favor of E–Layne Moulders Corp. and Am-

ity Development Corp. In addition, Peter Bolduc, Jr. and Kathie L. Bolduc, who each hold a 50% interest in the Debtor, personally guaranteed the note. In 2010, Amity Development Corp. assigned its interest in the note and mortgage to Jaspan Schlesinger.

Various affiliates of the Debtor used the Property as a farm ("Harvest Hills"), farm store, and an amusement center known as "Pumpkin Land." Pumpkin Land was a seasonal amusement park that included rides, attractions, nature activities, a corn maze, and the "Haunted Hayride," a nighttime wagon ride through the Property. The bulk of Pumpkin Land's cash flow was produced during the fall season, when the Haunted Hayride was in operation. In October 2014, a tragic accident occurred in connection with the Haunted Hayride, and a number of people were injured, one fatally.[2] The Debtor claimed that, in the aftermath of the accident, Harvest Hills' business suffered and there were cash flow problems, resulting in an inability to make mortgage payments.

### II.  The Bankruptcy Case

The Debtor filed a chapter 11 petition on July 2, 2015, indicating that the nature of its business is single asset real estate as defined in § 101(51B), and designating itself as a small business debtor as defined in § 101(51D).[3]

---

1.  Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.* All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure. All references to "Rule" shall be to the Federal Rules of Civil Procedure.

2.  It is undisputed that the personal injury claims arising from the accident were covered by insurance, and that, through a series of orders granting the claimants relief from the

automatic stay, it was agreed and ordered that the claimants would exclusively pursue insurance for satisfaction of their claims.

3.  The Debtor's designation as a small business debtor is inconsistent with this being a single asset real estate case. Section 101(51B) defines the term "single asset real estate" as:

real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the

The Debtor's sole asset is the Property. On Schedule A, the Debtor valued the Property at $1,500,000.00, subject to a secured claim in the amount of $1,130,228.04. According to the Debtor's Schedule D, Jaspan Schlesinger and E[-]Layne Moulders Corp. (collectively, the "Secured Party"), hold a joint mortgage on the Property and are each owed $550,000.00. Schedule D also reflected that the Debtor owed $30,228.04 to the Town of Mechanic Falls for real estate taxes on the Property. In its October 27, 2015 proof of claim, the Secured Party claimed it was owed $1,155,921.05, and that the note was accruing interest at 12.5%. The Debtor did not object to the proof of claim.

On July 2, 2015, the Analyst for the U.S. Trustee emailed the Debtor through counsel and provided the Debtor with, among other things, Operating Guidelines and Reporting Requirements for Chapter 11 Cases (Region One) (the "Operating Guidelines").

On July 21, 2015, Mr. Bolduc, on behalf of the Debtor, met with the Analyst for the U.S. Trustee at an initial debtor conference. During this meeting, Mr. Bolduc confirmed that he had received the Operating Guidelines. At the § 341 meeting of creditors held on August 6, 2015, Mr. Bolduc testified in his capacity as manager of the Debtor regarding matters relating to the Debtor's business operations (or lack thereof) and finances (or lack thereof). Specifically, Mr. Bolduc testified that the Debtor had no income and no employees, that Harvest Hills paid the Debtor's mortgage obligations, and that, up to the date of the bankruptcy filing, the Debtor did not maintain a bank account. Thereafter, the U.S. Trustee requested the Debtor to produce Harvest Hills' financial records including, but not limited to, balance sheets and profit and loss statements. The U.S. Trustee also requested the Debtor to produce its last-filed tax return—for fiscal year 2012. According to the U.S. Trustee, a balance sheet for Harvest Hills as of the end of the first quarter of 2015 reflected an account payable owed to the Debtor totaling $838,948.82.

On August 14, 2015, the Debtor filed its first monthly operating report for July 2015 ("July MOR"). The July MOR reflected that the Debtor had no employees, no income, and was receiving no rent from Harvest Hills. The Debtor did not timely file monthly operating reports for August, September, or October 2015.

On October 21, 2015, the U.S. Trustee filed a motion to convert or dismiss the case ("Motion to Dismiss"). The U.S. Trustee asserted that cause existed to dismiss or convert the case due to: (1) the Debtor's failure to file the required month-

---

gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.
11 U.S.C. § 101(51B). Pursuant to § 101(51D), a "small business debtor" is:
a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning or operating real property or activities incidental thereto) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $2,490,925.
11 U.S.C. § 101(51D). The definition of small business debtor specifically excludes debtors in single asset real estate cases and, therefore, by definition, a single asset real estate case cannot be a small business debtor case. *In re PM Cross, LLC*, 494 B.R. 607, 616–17 (Bankr.D.N.H.2013). We need not address the issue further, however, as neither the U.S. Trustee nor the bankruptcy court raised the issue, and it does not impact the outcome of the appeal.

ly operating reports for August and September 2015, and failure to produce financial information as requested by the U.S. Trustee (§ 1112(b)(4)(F) and (H)); and (2) the Debtor's continuing losses (the accrual of unpaid mortgage obligations) and the absence of a reasonable likelihood of rehabilitation as the Debtor had no income (§ 1112(b)(4)(A)). The U.S. Trustee asserted that conversion to chapter 7 would be in the best interests of the creditors and the estate because there appeared to be equity in the Property and there might be claims which could be asserted against the Debtor's affiliates for failure to pay the Debtor for their use of the Property. Alternatively, the U.S. Trustee requested that the case be dismissed.

The next day, the Debtor filed (late) the monthly operating reports for August and September 2015, which reflected that the Debtor had no employees, no income, and had not received any rent from Harvest Hills. The only difference from the July MOR was that the August report showed a deposit of $25.00 into the debtor-in-possession account, and the September report showed a deposit of $500.00 into the debtor-in-possession account.

On November 3, 2015, the Secured Party filed a statement consenting to the Motion to Dismiss.

On November 30, 2015, the Debtor filed (late) its October monthly operating report. On the same date, the Debtor filed a response to the Motion to Dismiss ("Response"). In its Response, the Debtor explained it commenced the bankruptcy to stay the foreclosure of the Property and allow Harvest Hills to continue operations through its peak fall season to determine whether the Debtor would be able to formulate a rehabilitation plan based on rent or other income from Harvest Hills' operations. The Debtor stated that "the financial performance through the end of October was substantially lower than had been experienced in 2013 and 2014," and, therefore, it was "unlikely that the Debtor w[ould] have a revenue stream that w[ould] permit a bootstrap reorganization th[at] cures or crams down the Secure[d] Party . . . ." It expressed its belief that a "properly marketed sale" of the Property would "likely produce a surplus to the Estate after payment of the allowed claim of the Secured Party, the real estate taxes and costs of administration," and it intended to file a liquidating plan to accomplish this outcome. According to the Debtor, "[l]iquidating plans are a legitimate and viable method of reorganization under Chapter 11 . . . ."

The Debtor also asserted that: (1) all monthly operating reports had been filed, albeit late because they were "caught in counsel[']s spam filter and not discovered until after the Motion to Dismiss was filed"; (2) "[o]ther than the accrual of real estate taxes and post-petition interest, the Debtor [wa]s not sustaining any operating losses or incurring any debts in the ordinary course of business"; and (3) it could "formulate and submit a feasible liquidating plan by the plan filing deadline."

The U.S. Trustee filed a reply to the Response, asserting that the Debtor had admitted to the late filing of monthly operating reports and that it lacked the financial resources to rehabilitate itself under chapter 11 and, therefore, it had offered nothing in its Response to refute the U.S. Trustee's arguments that cause existed to dismiss or convert the case. In addition, the U.S. Trustee noted that the Debtor had failed to pay its quarterly fee for the third quarter of 2015 (which was due on October 31, 2015), and such failure was additional "cause" under § 1112(b)(4)(K). The U.S. Trustee also argued that the Debtor's intent to file a liquidating plan was inapposite because rehabilitation is the

key inquiry under § 1112(b)(4)(A), and rehabilitation does not include liquidation.

The Debtor filed its November monthly operating report on December 8, 2015, which indicated the Debtor had received no income.

On December 8, 2015, the bankruptcy court held a nonevidentiary hearing on the Motion to Dismiss. At the hearing, the parties presented their arguments as set forth in the pleadings.[4] Counsel for the Secured Party was also present, and stated on the record that it supported dismissal.

The U.S. Trustee's counsel indicated the U.S. Trustee was pressing for dismissal of the case, rather than conversion, and pointed out the following: (1) the Secured Party had not received a mortgage payment since December 2014 because Harvest Hills was unable to generate enough money during its peak season; (2) the Debtor's intent to file a liquidating plan did not satisfy the rehabilitation requirement in § 1112(b)(4)(A); and (3) the Debtor's failure to offer a valid excuse or justification for the late filing of its monthly operating reports.

The Debtor reiterated that its bankruptcy strategy was to sell the Property, which would benefit the Bolducs and the Secured Party and would adversely affect no one. It argued that there was no diminution to the estate because there was "no one in the estate to be ... [a]ffected by diminution other than the debtor's equity." It also asserted that it would retain a broker and file a liquidating plan, but offered no specifics. According to the Debtor, rehabilitation in the context of § 1112(b)(4)(A) can include a liquidating plan. The Debtor

also maintained that it had "cured all the defects" by filing the outstanding monthly operating reports and paying the outstanding quarterly fees. Finally, the Debtor argued conversion did not make sense "because it would just be a sale of the property with a three percent commission to the trustee."

On December 14, 2015, the bankruptcy court entered an order (the "Dismissal Order") granting the Motion to Dismiss "[f]or the reasons set forth in the opinion dated December 14, 2015." The accompanying opinion provided, in its entirety, as follows:

This matter came before me on the October 21, 2015 Motion of the United States Trustee to Convert or Dismiss the Chapter 11 Case of Andover Covered Bridge, LLC (Docket Entry "DE" 35). Based upon the facts established on the record, including the undisputed facts set forth in the various pleadings, and the arguments made by counsel in their pleadings and at the hearing on December 8, 2015, I conclude that the United States Trustee has demonstrated that cause exists under 11 U.S.C. § 1112(b) to dismiss this case. Such cause includes, but is not limited to, the late filing of certain monthly operating reports, the accrual of post-petition debt without the income or other apparent ability to pay such debt, and the absence of a reasonable likelihood of rehabilitation.[1] I further conclude that dismissal, rather than conversion of this case, is in the best interests of the creditors and the estate.

It is therefore hereby ORDERED, ADJUDGED, and DECREED that the chapter 11 case of Andover Covered

---

4. "When there has been no demand for a full evidentiary hearing in contested matters, it is not unusual for a bankruptcy court to base its decisions on the representations of counsel." *Gentile v. DeGiacomo (In re Gentile)*, 492 B.R. 580, 583 n. 5 (1st Cir. BAP 2013) (citation omitted). The record shows no demand by any party for an evidentiary hearing on the Motion to Dismiss.

Bridge, LLC is hereby DISMISSED. A separate order shall enter.

In footnote 1, regarding the absence of a reasonable likelihood of rehabilitation, the bankruptcy court stated:

Here, the Debtor maintains that it will soon submit a liquidating plan. The U.S. Trustee argues that a liquidating plan is not enough to save the Debtor from dismissal as such a plan would not satisfy the rehabilitation requirement in § 1112(b)(4). In this case, I agree with the U.S. Trustee. "Rehabilitation" as used in § 1112(b)(4)(A) is distinct from a reorganization; while the latter can encompass liquidation, the former generally does not. 5 *Norton Bankr.L. & Prac.* 3d § 103:7. In addition, a Chapter 11 plan to rehabilitate must be grounded in something more concrete than a speculative intention to liquidate and thus cease operations. *In re Costa Bonita [Beach] Resort, Inc.[,]* 513 B.R. 184, 198 (Bankr. D.P.R.2014).

On December 28, 2015, the Debtor filed a motion (the "Motion to Reconsider") seeking to alter or amend the Dismissal Order or for a new trial pursuant to Bankruptcy Rule 9023 and Rule 59, or alternatively, for amended findings and an amended order pursuant to Bankruptcy Rule 7052 and Rule 52(b). The Debtor claimed that "[a] review of the docket and examination of Peter Bolduc, principal of the Debtor," revealed "material facts and representations that if known by the Court would reasonably be expected to result in a different conclusion...." It asserted that a previously undisclosed creditor, namely, Cynthia Robbins, had "advanced sums of money to enable the attachment of significant improvements to the [Property] thus enhancing its value," and it offered to make monthly payments of $4,000 to the Secured Party "to prevent the diminution of the secured claimants['] claim while the

reorganization plays itself out...." Finally, without offering any details, the Debtor argued that "[a] plan has been formulated, is feasible and can be effectuated within a reasonable period of time."

The U.S. Trustee objected to the Motion to Reconsider, arguing that the evidence before the court—including the Debtor's own admissions—supported dismissal of the case, and there was no newly discovered evidence.

On January 11, 2016, the bankruptcy court entered an order denying the Motion to Reconsider ("Order Denying Reconsideration"), stating that the evidence at the hearing was sufficient to support dismissal of the case, and there was nothing in the Motion to Reconsider to suggest there was any newly discovered evidence that would change its ruling. The bankruptcy court also denied the Debtor's request for findings of fact. This appeal followed.

### *JURISDICTION*

We have jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court. *See* 28 U.S.C. § 158(a)(1). An order dismissing a chapter 11 case is a final, appealable order. *In re Colón Martinez,* 472 B.R. 137, 143 (1st Cir. BAP 2012) (citations omitted). Moreover, an order denying reconsideration is a final order if the underlying order is final, and together the two orders end the litigation on the merits. *Jeffrey P. White & Assocs., P.C. v. Fessenden (In re Wheaton),* 547 B.R. 490, 495 (1st Cir. BAP 2016) (citing *Schwartz v. Schwartz (In re Schwartz),* 409 B.R. 240, 245 (1st Cir. BAP 2008) (citation omitted)). As the orders on appeal meet these criteria, we have jurisdiction to hear this appeal.

### *STANDARD OF REVIEW*

When reviewing a dismissal of a bankruptcy case under § 1112(b), we re-

view the bankruptcy court's findings of fact for clear error and conclusions of law de novo. *In re Colón Martinez,* 472 B.R. at 143 (citing *Gilroy v. Ameriquest Mortg. Co. (In re Gilroy),* BAP No. NH 07–054, 2008 WL 4531982, at *4 (1st Cir. BAP Aug. 4, 2008)). However, because the bankruptcy court "retains broad discretion to determine whether either conversion or dismissal is in the best interests of creditors and the estate after finding cause," we review the bankruptcy court's decision as to the appropriate relief for an abuse of discretion. *In re Gilroy,* 2008 WL 4531982, at *4. In addition, an order denying relief under Bankruptcy Rules 9023 and 7052 is also reviewed for an abuse of discretion. *Scotiabank de P.R. v. Medina Lorenzo (In re Medina Lorenzo),* BAP No. PR 15–011, 2015 WL 4537792, at *4 (1st Cir. BAP July 24, 2015), *aff'd,* 637 Fed. Appx. 623 (1st Cir.2016). "A court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *De Jounghe v. Lugo Mender (In re De Jounghe),* 334 B.R. 760, 765 (1st Cir. BAP 2005) (citation omitted).

### DISCUSSION

#### I. Dismissal Order

Section 1112(b) governs conversion or dismissal of a chapter 11 case. Section 1112(b)(1) and (2) provide, in pertinent part, as follows:

(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

(2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(1) and (2).

■ "When an interested party files a motion to convert or dismiss a [c]hapter 11 case, the bankruptcy court inquires as follows: Does 'cause' exist to convert or dismiss the case; and, if so, is conversion or dismissal in the best interests of creditors and the estate?" *Hoover v. Harrington (In re Hoover),* No. 15–2383, 828 F.3d 5, 8, 2016 WL 3606918, at *1 (1st Cir. July 5, 2016) (citing 11 U.S.C. § 1112(b)(1)).

■ The initial burden is on the movant to prove there is cause for either conversion or dismissal of the chapter 11 case. *Efron v. Candelario (In re Efron),* 529 B.R. 396, 411 (1st Cir. BAP 2015).

Once the movant establishes cause, the burden shifts to the opposing party to demonstrate "unusual circumstances" establishing that conversion or dismissal is not in the best interests of the creditors and the estate, and that it meets the other requirements of § 1112(b)(2). *Id.* If no such unusual circumstances exist and/or the other requirements are not met, the bankruptcy court *must* convert or dismiss the case. *Id.* The bankruptcy court has broad discretion to determine whether unusual circumstances exist and whether conversion or dismissal is in the best interest of creditors and the estate. *Id.* (citing *In re Colón Martinez,* 472 B.R. at 144; *In re Gilroy,* 2008 WL 4531982, at *4).

### A. Cause to convert or dismiss

■ Although the Code does not define "cause" as that term is used in § 1112(b), § 1112(b)(4) provides a nonexclusive list of what constitutes cause including, but not limited to, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter," or "failure timely to provide information or attend meetings reasonably requested by the United States trustee." *See* 11 U.S.C. § 1112(b)(4)(A), (F), and (H). In addition, the court may convert or dismiss a case "for reasons that are not specifically enumerated in the section, provided that these reasons are sufficient to demonstrate the existence of cause." *In re Colón Martinez,* 472 B.R. at 144 (citation omitted). " 'One ground, however, is sufficient, standing alone, to establish cause under the statute.' " *Id.* (quoting *Keven A. McKenna, P.C. v. Official Comm. of Unsecured Creditors,* C.A. No. 10–472 ML, 2011 WL 2214763, at *1 (D.R.I. May 31, 2011) (citations omitted)).

The U.S. Trustee sought dismissal of the Debtor's case under § 1112(b)(4)(F) and (H) because of the Debtor's failure to file timely monthly operating reports and other financial documents, and under § 1112(b)(4)(A) due to the continuing losses to the Debtor's estate and the absence of a likelihood of rehabilitation. The bankruptcy court granted dismissal on both of these grounds.

### 1. Failure to file timely monthly operating reports

■ Pursuant to § 1112(b)(4)(F), an "unexcused failure to satisfy timely any filing or reporting requirement established by [the Bankruptcy Code] or by any rule applicable to a case under [chapter 11]" is cause for conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(F). Pursuant to § 1112(b)(4)(H), cause also includes "failure to timely provide information . . . reasonably requested by the United States trustee. . . ." 11 U.S.C. § 1112(b)(4)(H).

The Operating Guidelines require chapter 11 debtors to file monthly operating reports fourteen days after the close of the month. In a small business case, the U.S. Trustee provides debtors with an interactive copy of the official form Small Business Monthly Operating Report. Section 308(b) requires a small business debtor to file periodic financial and other reports, and Bankruptcy Rule 2015(a)(6) mandates that the financial reporting should be done on an official form and on a monthly basis. *See* 11 U.S.C. § 308(b); Fed. R. Bankr.P. 2015(a)(6). District of Maine Local Bankruptcy Rule 2015–1(a) requires debtors in Maine to file monthly operating reports completed in accordance with the Operating Guidelines electronically with the Clerk of the bankruptcy court. *See* D. Me. LBR 2015–1. Finally, § 1116(4) requires a small business debtor to "file all postpe-

tition financial and other reports required by the Federal Rules of Bankruptcy Procedure or by local rule of the district court." 11 U.S.C. § 1116(4).

██ "Monthly reports and the financial disclosures contained within them 'are the life-blood of the Chapter 11 process' and are more than 'mere busy work.'" *In re Whetten*, 473 B.R. 380, 383 (Bankr. D.Colo.2012) (citing *In re Berryhill*, 127 B.R. 427, 433 (Bankr.N.D.Ind.1991)). "Monthly operating reports provide necessary information to the Court, creditors, and other parties in interest about the progress and prospects of a debtor's reorganization efforts." *ABCD Holdings, LLC v. Hannon (In re Hannon)*, 512 B.R. 1, 19 (Bankr.D.Mass.2014) (citation omitted) (internal quotations omitted). "Without these reports, the [U.S. Trustee] and creditors cannot determine when a debtor is incurring additional losses, is rendered administratively insolvent, or is transferring assets without authorization." *In re Whetten*, 473 B.R. at 383. "The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and they serve as a litmus test for a debtor's ability to reorganize." *Id.* at 384. Consequently, "[r]efusal or inability to provide financial disclosure sounds the death knell of a Chapter 11 case." *In re Costa Bonita Beach Resort, Inc.*, 513 B.R. at 199 (citations omitted) (internal quotations omitted). "The failure to file monthly operating statements ... 'whether based on inability to do so or otherwise, undermines the Chapter 11 process and constitutes cause for dismissal or conversion of the Chapter 11 proceedings.'" *Id.* (citation omitted).

In its Response to the Motion to Dismiss, the Debtor admitted that it failed to file timely its monthly operating reports. It offered an excuse for the untimely filing, however, contending that the monthly operating reports were caught in counsel's "spam filter" and this was not discovered until after the Motion to Dismiss was filed because the U.S. Trustee's office did not notify the Debtor or its counsel that the Debtor was not in compliance. Despite the proffered excuse, the bankruptcy court held that the Debtor's failure to file timely the monthly operating reports constituted cause to dismiss the case.

On appeal, the Debtor's sole argument with respect to the monthly operating reports is that it "demonstrated a reasonable justification for the tardily filed reports," and "the failure to file the reports was cured within a reasonable period of time." The Debtor contends it explained to the U.S. Trustee that the financial information regarding the operations of the Debtor's affiliates would not be available until after the seasonal operations concluded in November. It also asserted it received no notification that it was not in compliance with its reporting obligations, and it immediately filed the outstanding reports as soon as it discovered the deficiency.

The record clearly establishes that the Debtor failed to file timely several monthly operating reports. Although the Debtor blames its late filing on its counsel's email system and the U.S. Trustee's failure to notify the Debtor that it was not in compliance, the bankruptcy court found these excuses were not sufficient or persuasive. It was the Debtor's obligation to comply with its reporting requirements and to ensure that its counsel timely filed the reports with the U.S. Trustee and the bankruptcy court. The U.S. Trustee had no obligation to remind either the Debtor or his counsel of any failure to comply. Moreover, under § 1112(b)(4)(H), the Debtor's failure timely to provide information reasonably requested by the U.S.

Trustee does not need to be "unexcused" to constitute cause.

In light of the above, the bankruptcy court did not err in finding cause existed to dismiss the case under § 1112(b)(4)(F) and (H).

### 2. Substantial or continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation

Cause under § 1112(b)(4)(A) requires a two-part inquiry:

(1) whether after the commencement of the case, the debtor has suffered or continued to experience a negative cash flow, or, alternatively, declining asset value; and (2) whether there is any reasonable likelihood that the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's business enterprise back on a solid financial footing within a reasonable amount of time.

*In re Santos Franco*, No. 10–09758, 2012 WL 3071242, at *3 (Bankr.D.P.R. July 30, 2012) (citing, among other things, Alan N. Resnick & Henry J. Sommer, 7 *Collier on Bankruptcy* ¶ 1112.04[6][a] (16th ed.2011)). Both tests must be satisfied in order for cause to exist under § 1112(b)(4)(A).

To satisfy the first prong, "[a]ll that need be found is that the estate is suffering some diminution in value." *Id.* (citations omitted) (internal quotations omitted). Courts have held that a debtor's post-petition negative cash flow and/or an inability to pay current expenses satisfies the elements of § 1112(b)(4)(A). *See In re Peña*, No. 14–09799, 2016 WL 1043736, at *5 (Bankr.D.P.R. Mar. 15, 2016) (citing cases).

▮ The bankruptcy court determined that cause existed to dismiss the case due to the Debtor's "accrual of post-petition debt without the income or other apparent ability to pay such debt." This finding is supported by the record, which demonstrates the Debtor's estate had virtually no income and was unable to pay its mortgage. In its Statement of Financial Affairs, the Debtor indicated that it received no income, and at the creditors' meeting, Mr. Bolduc testified the Debtor has no income. In its monthly operating reports, the Debtor listed little ($25.00 on one and $500.00 on others) to no income, and indicated that it was not paying any debt. In its Response, the Debtor admitted the Property was its sole asset, its "financial performance through the end of October [2015] was substantially lower than had been experienced in 2013 and 2014," and "the adverse impact of the October 2014 accident among other things has been too great to overcome and it [wa]s unlikely that the Debtor w[ould] have a revenue stream that w[ould] permit a bootstrap reorganization th[at] cures or crams down the Secure[d] Party...." Also in its Response, the Debtor indicated that as a result of the accident, it had cash flow problems, "resulting in an inability to pay the mortgage." At the hearing, the Secured Party confirmed that the mortgage had not been paid since December 2014. Although Harvest Hills historically paid the mortgage, it was ultimately the Debtor's mortgage obligation. Moreover, the Debtor also admitted that post-petition interest and costs continued to accrue on the Secured Party's claim, and real estate taxes continued to accrue on the Property. In light of this evidence, the bankruptcy court's finding as to the first prong of § 1112(b)(4)(A) was not clearly erroneous.

▮ Once the court finds that there is a diminution of the bankruptcy estate, it must then consider whether the debtor has a reasonable likelihood of rehabilitation. "Rehabilitation" in this context means whether the debtor will be able to reestab-

lish its business. *In re Peña,* 2016 WL 1043736, at \*5. "Rehabilitation contemplates the successful maintenance and re-establishment of the debtors' business operations and 'to put back in good condition; re-establish on a firm, sound basis.'" *Id.* (citations omitted). "Rehabilitation" does not mean "reorganization." *In re Hoover,* 828 F.3d at 10, 2016 WL 3606918, at \*3 ("[T]he question of rehabilitation under [§ ] 1112(b)(4)(A) is not synonymous with reorganization ....") (citation omitted); *In re Santiago,* No. 15–06132, 2015 WL 5919926, at \*6 (Bankr.D.P.R. Oct. 9, 2015) (citing 7 *Collier on Bankruptcy* ¶ 1112.04[6] [a] [ii] (16th ed.2015)). "Whereas, confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation." *In re Santiago,* 2015 WL 5919926, at \*6 (citation omitted) (internal quotations omitted).

■■■■ To determine whether the debtor's business prospects are sufficient to justify a finding of a reasonable likelihood of rehabilitation, courts analyze if the causes for debtor's continuing losses can be corrected, and if the debtor or some other party in interest is capable or willing to perform the necessary remediation. This is not a "technical [test] of whether the debtor can confirm a plan, but rather, whether the debtor's business prospects justify continuance of the reorganization effort." Nevertheless, rehabilitation in a Chapter 11 begins with a confirmable plan. It then requires, at minimum, the prospect of reestablishment of a business.

*In re Peña,* 2016 WL 1043736, at \*5 (citations omitted). In addition,

■■■■ "A plan for rehabilitation under Chapter 11 must be based on more than speculative data."... "If it is apparent that the debtor has no profitable core around which to structure a plan of reorganization, if the debtor is faced

with continuing losses, and if the debtor's assets are declining in value, the best interest of creditors may require the court to dismiss or order liquidation of the debtor's estate under Chapter 7." ... "Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." *Id.* (citations omitted).

■■■■ The Debtor argues that the bankruptcy court erred in holding that there was an absence of a likelihood of rehabilitation because the Debtor demonstrated that it intended to propose a liquidating plan, which is permissible in chapter 11. While it is true that a reorganization may include a liquidating plan, rehabilitation for purposes of § 1112(b) does not include liquidation. *See In re Santiago,* 2015 WL 5919926, at \*6; *In re The Ledges Apartments,* 58 B.R. 84, 87 (Bankr.D.Vt.1986) ("Reorganization encompasses rehabilitation and may contemplate liquidation. Rehabilitation, on the other hand, may not include liquidation."); *see also In re Gonic Realty Trust,* 909 F.2d 624, 627 (1st Cir.1990) ("[W]ith no business left to reorganize, Chapter 11 proceedings were not serving the purpose of rehabilitating the debtor's business."). "Rehabilitation is a different and ... much more demanding standard than reorganization." *In re Brutsche,* 476 B.R. 298, 301 (Bankr.D.N.M.2012) (citation omitted) (internal quotations omitted). If "the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's enterprise back on a solid financial footing within a reasonable amount of time," then the debtor may have a reasonable likelihood of rehabilitation. *In re Costa Bonita Beach Resort, Inc.,* 479 B.R. 14, 42 (Bankr.D.P.R.2012) (citation omitted).

■■■■ There is nothing in the record that suggests financial viability for the

Debtor was reasonably likely, or it would suddenly be able to increase its cash flow. Rather, the Debtor admitted it would not be able to generate sufficient cash flow to service its debts, even after Harvest Hill's peak season. " 'A debtor who is unable to service its debt at the outset of the case and remains unable to do so for the foreseeable future does not have a reasonable likelihood of rehabilitation.' " *In re Material Mgmt., Inc.*, No. 14–00478, 2014 WL 2468313, at *7 Bankr.D.P.R. May 28, 2014 (citations omitted). In addition, the Debtor failed to provide any specifics as to its plan to sell the Property and therefore, offered only "unsubstantiated hopes for a successful reorganization." Thus, the bankruptcy court did not err in finding an absence of a reasonable likelihood of rehabilitation in light of the Debtor's "speculative intention to liquidate and thus cease operations." *See In re Hoover*, 828 F.3d at 10, 2016 WL 3606918, at *3 (giving deference to bankruptcy court's refusal to credit debtor's speculative testimony about his plans for generating income when determining whether there was a reasonable likelihood of rehabilitation for purposes of § 1112(b)(4)(A)).

In light of the foregoing, the bankruptcy court did not err in finding that cause existed to dismiss the case under § 1112(b)(4)(A).

**B. Exception to Dismissal or Conversion**

The Debtor argues that the bankruptcy court erred by focusing on cause and the absence of a reasonable likelihood of rehabilitation, and failing to "apply the second step which is required under [§ ] 1112(b)(1) and (2)."

Section 1112(b)(1) requires the bankruptcy court to dismiss or convert a case if it finds cause. 11 U.S.C. § 1112(b)(1). Section 1112(b)(2) provides, however, that even if the bankruptcy court finds cause, it may not dismiss or convert a case if it "identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate," and the debtor establishes:

(A) there is a reasonable likelihood that a plan will be confirmed within ... a reasonable period of time; and

(B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2)(A) & (B). The debtor has the burden of establishing that all the factual elements of § 1112(b)(2) exist.

Courts have much discretion in determining whether there are unusual circumstances that should prevent dismissal or conversion. *In re Costa Bonita Beach Resort, Inc.*, 513 B.R. at 195 (citations omitted). Although a finding of unusual circumstances is within the court's discretion, the phrase "contemplates 'conditions that are not common in chapter 11 cases.' " *In re Whetten*, 473 B.R. at 384 (quoting *In re Prods. Int'l Co.*, 395 B.R. 101, 109 (Bankr.D.Ariz.2008)). Importantly, however, this "unusual circumstances" exception does not apply if the bankruptcy court finds cause to convert based on a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," as set forth in § 1112(b)(4)(A). *See* 11 U.S.C. § 1112(b)(2)(B).[5]

■ The Debtor argues that it met its burden under § 1112(b)(2)(A) of demonstrating a likelihood that a plan (which would be a liquidating plan) would be confirmed within a reasonable time. It also argues that under § 1112(b)(2)(B), it demonstrated a reasonable justification for the tardily filed reports and it cured its failure to timely file the reports within a reasonable period of time. It fails to acknowledge, however, that it also had the burden of establishing the other prongs of § 1112(b)(2)—unusual circumstances, and that the grounds for conversion or dismissal include an act or omission *other than* the cause set forth in § 1112(b)(4)(A). By its own terms, § 1112(b)(2) provides that the exception to dismissal does not apply if one of the grounds for dismissal or conversion is a "substantial or continuing loss to or diminution of the estate" and "absence of a reasonable likelihood of rehabilitation" as set forth in § 1112(b)(4)(A). Because the bankruptcy court found that cause existed to dismiss under § 1112(b)(4)(A), the § 1112(b)(2) exception did not apply. *See In re Korn*, 523 B.R. 453, 465 n. 28 (Bankr. E.D.Pa.2014); *In re Burgess*, No. 11–1257, 2013 WL 5874616, at *3 (Bankr.N.D.W.Va. Oct. 30, 2013) ("Put simply, if cause is established by virtue of § 1112(b)(4)(A), then the provisions of § 1112(b)(2) do not apply."); *In re Visicon S'holders Trust*, 478 B.R. 292, 316 (Bankr.S.D.Ohio 2012); *In re Brutsche*, 476 B.R. at 306; *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 707, 717 (Bankr.D.Md.2011).

In any event, the Debtor did not argue before the bankruptcy court that any un-

usual circumstances existed which established that converting or dismissing the case was not in the best interest of creditors and the estate, and the record does not demonstrate that there were any such unusual circumstances. Although the accident at Pumpkin Land was unfortunate, the financial position the Debtor found itself in was not uncommon or unusual.

Thus, the Debtor did not establish that the § 1112(b)(2) exception to dismissal applied.

**C. Which option is in best interests of creditors and the estate**

Once the bankruptcy court determines that cause exists to convert or dismiss a chapter 11 case, and that the debtor has not demonstrated any unusual circumstances (or, as occurred here, the unusual circumstances exception did not apply as to the "cause" grounded in § 1112(b)(4)(A)), it must then decide which option is in the best interests of creditors and the estate. This decision is committed to the discretion of the bankruptcy court. *In re Hoover*, 828 F.3d at 11, 2016 WL 3606918, at *4 (stating that once bankruptcy court determined there was cause, it had broad discretion to convert (or dismiss) if it concluded that conversion (or dismissal) was in the best interest of creditors).

Although the Bankruptcy Code does not define the phrase "best interests of the creditors and the estate," courts have typically· considered the following factors to determine whether dismissal or conversion is in the best interest:

---

5. Section 1112(b)(2) is written in the conjunctive, and thus requires not only that the court identify unusual circumstances, but also that a debtor establish that: (1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time; and (2) the grounds for conversion or dismissal include an act or omission other than the cause set forth in § 1112(b)(4)(A) for which there exists a reasonable justification and which can be cured within a reasonable time. *See* 11 U.S.C. § 1112(b)(2).

(1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal, (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted, (3) whether the debtor would simply file a further case upon dismissal, (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors, (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise, (6) whether any remaining issues would be better resolved outside the bankruptcy forum, (7) whether the estate consists of a "single asset," (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests, (9) whether a plan has been confirmed and whether any property remains in the estate to be administered, and (10), whether the appointment of a trustee is desirable to supervise the estate and address possible environment and safety concerns.

*In re Costa Bonita Beach Resort, Inc.,* 513 B.R. at 200–01 (quoting *Collier on Bankruptcy*, at ¶ 1112.04[7] ). "In essence, 'the court should evaluate and choose the alternative that would be most advantageous to the parties and the estate as a whole.'" *Id.* at 201 (citations omitted).

The record reflects that the Debtor did not address the choice of remedy before the bankruptcy court. Moreover, the Debtor did not address in its brief why the bankruptcy court's election of one remedy over another was an abuse of discretion. As such, the issue is waived. *See, e.g., Canning v. Beneficial Me., Inc. (In re Canning),* 706 F.3d 64, 70 n. 7 (1st Cir. 2013) (explaining failure to brief issue re-

sults in waiver) (citation omitted); *Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assoc., Ltd. (In re Mark Bell Furniture Warehouse, Inc.),* 992 F.2d 7, 9 (1st Cir.1993) (explaining issue not preserved due to failure to raise it before bankruptcy court).

Notwithstanding the waiver, we note the record reflects that although the bankruptcy court did not expressly discuss the above factors, it considered the issue as it concluded that "dismissal, rather than conversion of this case, is in the best interests of the creditors and the estate." The record further reflects that there were sufficient circumstances to warrant this decision. Accordingly, if the issue were preserved, we would conclude the bankruptcy court did not abuse its discretion in dismissing, rather than converting, the case.

## II. Order Denying Reconsideration

In its brief, the Debtor lists in its statement of issues the following:

Was the Bankruptcy Court's denial of Debtor's Motion to Alter or Amend or for a New Trial on Order of Dismissal Pursuant to Bankruptcy Rule 9023 and FRCP 59; and Alternatively for Amended Findings and an Amended Order Pursuant to Bankruptcy Rule 7052 and FRCP 52(b) reversible error and an abuse of discretion.

The Debtor does not, however, present any argument as to why the denial of the Motion to Reconsider constituted reversible error and/or an abuse of discretion. Therefore, the issue is waived. *See In re Canning,* 706 F.3d at 70 n. 7; *Nikijuluw v. Gonzales,* 427 F.3d 115, 120 n. 3 (1st Cir. 2005) (stating it is "well established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (citations omitted) (internal quo-

tations omitted); *Garcia–Ayala v. Lederle Parenterals, Inc.,* 212 F.3d 638, 645 (1st Cir.2000) (holding that failure to brief an argument constitutes waiver) (citations omitted).

## CONCLUSION

For the reasons set forth above, we **AFFIRM**.